David J. and Sharon OLDROYD

v.

ASSOCIATES CONSUMER DISCOUNT CO./PA, et al.

Civ. A. No. 93–6528.

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1994.

---

Darryl L. Shapiro, Langhorne, PA, for plaintiffs.

Robert A. Nicholas, Reed, Smith, Shaw & McClay, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiffs filed a four count complaint against their mortgage company, Associates Consumer Discount Company ("ACD"), and its branch manager, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., as well as common law defamation. Defendants filed a motion to dismiss under Fed. R.Civ.P. 12(b)(6). In deciding this motion, I must determine:

1. Whether the Oldroyds' claim under the Truth in Lending Act alleging violations by ACD in October and December of 1989 is time-barred under that statute's one year statute of limitations. I hold that it is.

2. Whether the defendant, which has as its primary business the issuance of home mortgages, is a "consumer reporting agency" subject to the Fair Credit Reporting Act. I hold that it is not.

3. Whether the defendant, which has as its primary business the issuance of home mortgages, is a "debt collector" subject to the Fair Debt Collection Practices Act. I hold that it is not.

4. Whether the Oldroyds' claim for defamation based on a statement allegedly made in July of 1992 is time-barred under the Pennsylvania one year statute of limitations for defamation claims. I hold that it is time-barred.

### FACTS

The plaintiffs, David and Sharon Oldroyd, obtained a fifteen year mortgage from the defendant, Associates Consumer Discount ("ACD"), on November 9, 1989, to refinance their existing thirty year home mortgage. The Oldroyds complain that they have been treated unfairly and illegally by ACD in several ways.

First, the Oldroyds allege that the agent they dealt with at ACD failed to make disclosures that they were entitled to receive under the federal Truth in Lending Act.[1]

Secondly, the Oldroyds allege that in January 1992, after failing to make their mortgage payment for the month, they came to an agreement with Cordoza Jacks, Jr., a branch manager for ACD, in which ACD allegedly promised to "forgive" the January 1992 mortgage payment and recapture it at the end of the payment period. The Oldroyds believed that this agreement absolved them of any obligation to make the January mortgage payment. Nonetheless, when the Oldroyds obtained a credit report in June of 1992, the January payment was listed as delinquent.

Thirdly, the Oldroyds allege that in July of 1992 Jacks called the branch manager at "Commercial Credit Finance" or "Commercial Credit Corporation" and told that person that the Oldroyds were behind in their mortgage payments, causing that lender to reconsider giving the Oldroyds a second mortgage. The Oldroyds claim that Jacks knowingly and maliciously gave the lender false information.

Finally, the Oldroyds allege that in July of 1993, after ACD began a foreclosure action against them, their attorney sent a letter to ACD stating that ACD was not to contact the Oldroyds directly, but was to deal only with him. Despite this, Jacks called the Oldroyds and left a "threatening" message on their telephone answering machine.

Following a pretrial conference with counsel, I gave the parties twenty days to conduct discovery and submit memoranda and affidavits regarding whether ACD is a "consumer reporting agency" subject to the Fair Credit Reporting Act or a "debt collector" subject to the Fair Debt Collection Practices Act, and whether the complained-of communications dealt with matters exempt from liability under those acts. ACD subsequently submitted an affidavit executed by its Group Vice President, Scott Geary, in which he avers that:

1) ACD does not regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information for the purpose of furnishing consumer reports to third parties;

2) All information about the Oldroyds that ACD provided to credit reporting agencies related solely to ACD's own transactions or experiences with the Oldroyds;

3) ACD's principal business purpose is to make and service consumer loans, and ACD does not collect any debts owed to any entity other than ACD;

---

1. The Oldroyds allege that ACD failed to inform them: a) that ACD was not licensed to write mortgages for more than fifteen years; b) that their tax payments were not included in the mortgage payment; c) of the exact interest rate until the closing; and d) of the reason that they were asked to sign the mortgage documents more than once. The Oldroyds also allege that ACD didn't send them the required disclosure statement before settlement.

4) Cordoza Jacks, an employee of ACD, was acting on behalf of ACD, solely to collect a debt owed to ACD, when he telephoned the Oldroyds over their attorney's objection.

The plaintiffs submitted neither memoranda nor affidavits in response to this Court's order, and does not contest the statements in Mr. Geary's affidavit.

STANDARDS APPLICABLE TO THIS MOTION

■ Since it appears on the face of the Oldroyds' complaint that their Truth-in-Lending Act and defamation claims are barred by the applicable statutes of limitations, the limitations defense is properly raised by way of a motion to dismiss. *Brown v. Bellaplast Maschinenbau*, 104 F.R.D. 585, 587 (E.D.Pa.1985). The issue of whether ACD is either a "consumer reporting agency" subject to the Fair Credit Reporting Act, or a "debt collector" subject to the Fair Debt Collection Practices Act, however, requires me to look beyond the four corners of the complaint, and I must treat ACD's motion to dismiss those claims as a motion for summary judgment. Different standards govern my review of motions to dismiss and for summary judgment.

In deciding a motion to dismiss under Fed. R.Civ.P. 12(b)(6), I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party". *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The court may dismiss an action for failure to state a claim only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief". *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984).

To succeed on a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2553. In deciding whether the standards for summary judgment have been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Invest.*, 951 F.2d 1399, 1404 (3d Cir.1991).

I. The Truth in Lending Act Claim

■ The plaintiffs' Truth in Lending Act claim will be dismissed because it appears from the face of the complaint that it is barred by the applicable statute of limitations. Actions under the Truth in Lending Act must be brought within one year of the violation, though a consumer may raise violations of the Act as a defense to a collection action after the expiration of the filing period. 15 U.S.C. § 1640(e). The Oldroyds allege that ACD failed to disclose required information when they refinanced their home mortgage in November of 1989, four years before this action was filed. Complaint at ¶¶ V–XV. It therefore appears from the face of the complaint that the Truth in Lending Act claim is time-barred.

■ The plaintiffs argue that the Truth in Lending Act limitations period does not begin to run until "after rescission of the Loan Agreement", and that the loan agreement was rescinded by the Oldroyds on June 25, 1993, when their attorney informed ACD that the Oldroyds would be bringing a Truth in Lending Act claim. The plaintiffs' reliance upon *Reid v. Liberty Consumer Discount Co. of Pa.*, 484 F.Supp. 435 (E.D.Pa.1980), is misplaced. The limitations period runs from the date of rescission only if the violation alleged is the failure of the lender to terminate its security interest upon rescission, as required by 15 U.S.C. § 1635(b). *See Reid*, 484 F.Supp. at 441. The Oldroyds do not allege such a violation, but only a failure to make required disclosures. Thus, the one year limitations period must run from the date of the complained-of violation: the failure to make those disclosures in November

of 1989. The Truth-in-Lending Act claim is time-barred and will be dismissed.[2]

## II. The Fair Credit Reporting Act Claim

■ I will grant summary judgment on the plaintiffs' claim under the Fair Credit Reporting Act (FCRA) because there is no evidence that ACD is a "consumer reporting agency" subject to the requirements of the FCRA, or that its communications regarding the Oldroyds' mortgage were actionable under that Act.

The FCRA imposes liability only upon "consumer reporting agencies" and the recipients of "consumer reports" for violating its requirements for the issuance and use of such reports. 15 U.S.C. § 1681n. The FCRA specifically exempts "any report containing information solely as to transactions or experiences between the consumer and the person making the report" from the requirements imposed on the issuance of "consumer reports". 15 U.S.C. § 1681a(d).

■ Plaintiffs do not dispute the evidence that ACD is not a "consumer reporting agency" under the FCRA, since it does not "regularly engage[ ] ... in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties". 15 U.S.C. § 1681a(f). Instead, the plaintiffs argue that a creditor who reports misleading or false information to a credit reporting agency *should* fall under the scope of the FCRA, and cite in support the provision of the FCRA which states that the FCRA does not preempt state laws with respect to the collection, distribution or use of consumer credit information, except to the extent that such laws are inconsistent with the FCRA. As that section of the statute implies, the FCRA is *not* intended to sweep across the spectrum of possible claims for harmful credit reporting practices. The statute is limited in scope, and I will not expand it beyond its intended application.

■ Furthermore, the plaintiffs do not dispute that the information ACD gave to the credit reporting agency related solely to ACD's own transactions or experiences with the plaintiffs, and therefore falls within the exemption in 15 U.S.C. § 1681a(d). Because there is no genuine issue of fact as to the applicability of the FCRA to ACD or its communications to credit reporting agencies about the Oldroyds' mortgage, I will grant summary judgment for the defendants on the plaintiffs' FCRA claim.

## III. The Fair Debt Collection Practices Act Claim

### A. Statute of Limitations

The plaintiffs' claim under the Fair Debt Collection Practices Act (FDCPA) is not barred by the statute of limitations. Actions under the FDCPA must be brought within one year of the alleged violation. 15 U.S.C. § 1692k(d). The plaintiffs allege that ACD's employee made a harassing phone call to them in August of 1993, after their attorney notified ACD by telephone and letter dated June 25, 1993, that the Oldroyds did not want to be contacted directly, but would only deal with ACD through their attorney. Complaint at ¶¶ XXXII–XXXIII, Ex. B. This complaint was brought on December 7, 1993, well within one year of the alleged violation.[3]

### B. The Applicability of the FDCPA

■ I will dismiss the Oldroyds' FDCPA claim, however, because ACD is not liable under the act. The FDCPA imposes civil liability only upon "debt collectors": persons who regularly engage in the business of collecting or attempting to collect debts owed to another. 15 U.S.C. § 1692a(6). The statute specifically excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts of such creditor" from the definition of a "debt collector". 15 U.S.C. § 1692a(6)(A). Plaintiffs do not dispute the evidence that ACD's principal busi-

---

**2.** Because I will dismiss the complaint as time-barred, I need not address the arguments by ACD that the plaintiffs have failed to plead a cognizable claim under the Truth in Lending Act.

**3.** Defendants' argument that this claim is barred by the statute of limitations is apparently based upon a mistaken belief that the allegedly harassing communication occurred in July 1992, rather than July 1993.

ness purpose is to make and service consumer loans and not the collection of debts, that ACD does not collect any debts owed to any entity other than ACD, and that Cordoza Jacks was an employee of ACD and acting on its behalf when he telephoned the Oldroyds about their loan. ACD is therefore not a "debt collector" as defined by the FDCPA, and summary judgment is granted for the defendants on the plaintiffs' FDCPA claim.

## IV. The Defamation Claim

 The Oldroyds' common law defamation claim is also barred by the applicable statute of limitations. Pennsylvania's one year statute of limitations for injuries to the person applies to defamation actions. 42 Pa. Cons.Stat.Ann. § 5523. The Oldroyds allege that Cordoza Jacks, Jr. telephoned the branch manager at Commercial Credit Finance in July of 1992 and falsely and maliciously reported that the Oldroyds were behind in their mortgage payments. Complaint at ¶¶ XXIV–XXVI. Since this lawsuit was not filed until December of 1993, it appears on the face of the complaint that the claim is time-barred.

The Oldroyds argue that the limitations period has not expired because the defamation complained of is a "continuous and ongoing act", in that the Oldroyds are still suffering damage from the alleged defamation. Under Pennsylvania law, however, the limitations period on a claim for slander or libel runs from the date of publication. *See Zions First National Bank, N/A v. United Health Clubs, Inc.,* 533 F.Supp. 1127 (E.D.Pa.1982), *reversed in part on other grounds,* 704 F.2d 120 (3d Cir.1983); *Abernethy v. Williams,* 136 Pa.Cmwlth. 715, 584 A.2d 1085, 1087 (1990). Since the Oldroyds' complaint does not allege that Jacks continued making defamatory statements after July of 1992, the limitations period elapsed in July of 1993, six months before the Oldroyds filed their complaint. I will dismiss the Oldroyds' defamation claim.

## ORDER

**AND NOW,** this 16th day of September 1994, upon consideration of the motion of Defendant Associates Consumer Discount Company to dismiss the complaint, the plaintiffs' response, and the supplementary submissions ordered by this Court, (a) I **ORDER** that the First and Third counts of the complaint are **DISMISSED** with prejudice, (b) I **ORDER** that on the Second and Fourth counts of the complaint summary judgment is granted in favor of the Defendant and against the Plaintiff.