KONDRAT et al., Appellants,

v.

MORRIS et al., Appellees.

[Cite as *Kondrat v. Morris* (1997), 118 Ohio App.3d 198.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69812.

Decided Feb. 14, 1997.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

*Thomas & Boles, Stephen G. Thomas* and *Kathleen B. Dangelo*, for appellants.

*Gaines & Stern Co., L.P.A., James M. Mackey* and *Roger W. Van Deusen; Weltman, Weinberg & Associates* and *Rosemary Taft Milby; Mary Ann Rabin Co., L.P.A.,* and *Julie E. Rabin,* for appellees.

KARPINSKI, Judge.

Plaintiffs–appellants, Paul and Betty Kondrat, appeal from the judgment of the trial court granting summary judgment for defendants-appellees, Gregory J. Morris, SRW Inc., SRW–Blue Ridge Cablesystems L.P. ("Blue Ridge"), Homestead Equities, Inc., Homestead Capital Corporation, and Franklin Credit Management Corporation. Plaintiffs filed suit against these defendants alleging, *inter alia,* negligence, fraud, misrepresentation, breach of fiduciary duty, and the sale of unregistered securities regarding plaintiffs' purchase of an interest in Blue Ridge. For the reasons that follow, judgment was properly rendered for the defendants.

The facts of this case evolve from Paul Kondrat's purchase of a $25,000 interest in Blue Ridge. Kondrat learned of this investment opportunity in September 1989, from his neighbor, Gregory Morris. At the time, Morris was a broker with the investment firm of Friedrich, Bailey, Flayhart & Associates.[1]

Kondrat purchased the interest in the limited partnership in October 1989. Prior to purchasing the interest, Kondrat met with Morris twice. On October 9, 1989, Kondrat executed an investor account form regarding this investment. The next day, Kondrat signed a subscription agreement for one unit interest of the limited partnership for $50,000. This interest was later reduced to $25,000 in 1990. Kondrat financed this investment through a loan from Homestead Savings Association. Kondrat signed a note and mortgage in favor of Homestead Savings.

The subscription agreement acknowledged that "[t]here are substantial risks incident to the ownership of Units." The agreement further provided as follows:

"3. RECEIPT AND REVIEW OF MEMORANDUM: The undersigned has been furnished and has carefully read the Private Placement Memorandum of the Partnership and the exhibits thereto (the 'Memorandum') including the form of the limited partnership agreement of the Partnership (the 'Partnership Agreement'). The undersigned is aware that:

"(a) There are substantial risks incident to the ownership of Units.

"* * *

---

1. The investment firms of Friedrich & Friedrich Financial Advisory Group and Friedrich, Bailey, Flayhart & Associates were dismissed as defendants because of plaintiffs' failure to complete service. This dismissal has not been appealed.

"5. LIMITATION ON TRANSFER OF UNITS: The undersigned recognizes and agrees that:

"(a) Due to restrictions described below, the lack of any market existing or likely to exist for the Units and the adverse tax consequences in the event he or she should sell his or her Units in the Partnership, his or her investment in the Partnership will be highly illiquid and most likely, must be held indefinitely.

"(b) The undersigned must bear the economic risk of investment in the Units for an indefinite period of time, since the Units have not been registered under the Securities Act of 1933, as amended. Therefore, the Units cannot be offered, sold, transferred, pledged or hypothecated to any person unless either they are subsequently registered under said Act or an exemption from such registration is available and the favorable opinion of counsel for the Partnership to that effect is obtained (which is not anticipated). Further, the undersigned may not resell, hypothecate, transfer, assign or make other disposition of said Units except in a transaction exempt or excepted from the registration requirements of the securities law of the state in which the Units are offered and sold, and that the specific approval of such sales is required in some states."

The agreement included the following representations of the subscriber:

"6. REPRESENTATIONS OF THE SUBSCRIBER: The undersigned represents and warrants to the Partnership and the General Partners:

" * * *

"(ii) that he or she has a net worth in excess of four times his or her investment herein (excluding primary residence, furnishings and automobiles); and

"(iii) that he or she (and his or her purchaser representative, if such a purchaser representative is utilized by him or her) has (have) such knowledge and experience in financial and business matters that he or she is (they are) capable of evaluating the merits and the risks of this investment. The General Partners may, in circumstances they deem appropriate, modify the net worth requirements described in (ii) above.

"(a) the undersigned has been furnished with all materials and responses to his or her inquiries relating to the Partnership and its proposed activities, the offering of Units or anything else which he or she has requested and he or she has been afforded the opportunity to obtain any additional information necessary to verify the accuracy of any representation or information set forth in the Memorandum;

"* * *

"(d) the undersigned has the financial ability to bear the economic risk of his or her investment, and has adequate means for providing for his or her current needs and personal contingencies and has no need for liquidity with respect to his or her investment in the Units;

"* * *

"(f) The Undersigned has not been furnished with any oral representation, warranty or information in connection with the offering of the Units by the General Partners, or any of their officers, employees, agents, affiliates or subsidiaries.

"* * *

"8. REPRESENTATIONS AS TO INVESTMENT EXPERIENCE: The undersigned further hereby represents that he or she has such knowledge and experience in business and financial matters as to be capable of evaluating the Partnership and the proposed activities thereof the risks and merits of investment in the Units and of making an informed investment decision thereon or the undersigned is relying in making the investment on the advice of a purchaser representative."

The Private Placement Memorandum ("PPM") also delineated the risks involved with this venture as follows:

"THIS INVESTMENT INVOLVES A HIGH DEGREE OF RISK (SEE 'RISK FACTORS').

"* * *

"RISK FACTORS

"Investment in the Partnership involves a high degree of risk and is suitable only for persons of substantial financial means who have no need for liquidity in their investments (see 'Terms of the Offering—Suitability of Investors')."

Kondrat admits that he may have seen this PPM prior to the purchase but claims that he did not receive it until November 1989, after the purchase, whereupon he briefly looked it over and placed it in his file.

Kondrat explained that he expected to receive a two-to-one return on his investment over the next four years. This expected return was based on the projected sale of the cable system in the future. In 1992, however, the re-regulation of the cable industry resulted in a decrease in the value of the cable systems. According to the records of the partnership, Kondrat's initial investment of $25,000 was worth a mere $5,485.10 on December 31, 1993. In 1994, Morris informed Kondrat that the decrease in the value of his investment meant that there would not be sufficient profits to cover Kondrat's debt obligation to the bank.

After the investment did not develop as they had hoped, plaintiffs filed suit against the above-named defendants on January 17, 1995. The core of plaintiffs' suit is as follows:

"Defendants made representations, warranties and/or guarantees to Plaintiffs Paul Kondrat and Barbara Kondrat that Paul Kondrat's investment in SRW–Blue Ridge Cablesystems, L.P. was a good investment, with minimal risk which would generate sufficient profit to cover the above-referenced loan and would be sufficient profit to cover the above-referenced loan and would be a four-year investment, at the end of which period, the investment would be sold generating a cash out profit of a 2 to 1 ratio."

The complaint filed by Kondrat and his wife specifically alleged that (1) defendants Morris and Friedrich, Bailey, Flayhart & Associates breached certain promises and representations regarding the value of the investment (count one), (2) defendants sold securities which were not registered as required by R.C. Chapter 1707 (count two), (3) defendants made material omission regarding the sale of this security (count three), (4) defendants were negligent in selling the partnership share to Kondrat, because he did not qualify as a suitable purchaser (count four), (5) defendants' failure to inform Kondrat of the risks, to provide Kondrat with the PPM, or to inform him of the risks involved constituted fraud (counts five and nine), (7) defendants were negligent and breached a fiduciary duty owed to Kondrat (counts seven, eight, and ten), (8) defendants engaged in a pattern of corrupt activity which violated the state civil RICO laws in the sale of their interest to Kondrat (count 11), (9) defendant Franklin Credit engaged in coercive debt collection practices (count 12), and (10) defendants acted willfully and maliciously, thus entitling plaintiffs to punitive damages. Additionally, plaintiffs demanded an accounting of the partnership (count six).

In their motions for summary judgment, defendants argued that they were entitled to judgment as a matter of law because (1) plaintiffs' claims were barred by the applicable statute of limitations, and (2) plaintiffs failed to set forth sufficient evidence in support of the claims presented in the complaint. The trial court did not state on what basis it granted judgment for defendants.

Plaintiffs' first assignment of error states as follows:

"I. The trial court erred in granting summary judgment on the issue of statute of limitations."

The issue in the first assignment is whether the applicable statute of limitations bars plaintiffs' claims of negligence, fraud, misrepresentation, breach of fiduciary duty, and sale of unregistered securities.

Three of these claims—misrepresentation, sale of unregistered securities,[2] and fraud—are covered by the statute of limitations found in R.C. 1707.43. *Hater v. Gradison Div. of McDonald & Co. Securities, Inc.* (1995), 101 Ohio App.3d 99, 655 N.E.2d 189; R.C. 1707.40.

Plaintiffs purchased their limited partnership interest in October 1989. The lawsuit was filed in January 1995. R.C. 1707.43 states in part as follows:

"No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."

Thus plaintiffs must bring their action either two years from the time they knew or should have known of the facts underlying their complaint or four years from the date of sale or contract of sale, whichever is the shorter period. *Hater v. Gradison Div. of McDonald & Co., supra*, 101 Ohio App.3d at 113, 655 N.E.2d at 198.

■ Under either provision in R.C. 1707.43, plaintiffs' claims are time-barred. First, the complaint falls outside the four-year provision because the complaint, filed in January 1995, was filed more than five years after the sale of the partnership interest in October 1989. Plaintiffs' argument that the October 1989 date cannot be used as the date of sale is unavailing. The Ninth District has held that the date of sale for criminal securities fraud actions is the date the subscription agreements were signed. *State v. Detillio* (1992), 90 Ohio App.3d 241, 244, 629 N.E.2d 1, 2–3. Kondrat signed the subscription agreement on October 10, 1989. In his deposition, moreover, Kondrat agreed that he purchased his portion of the limited partnership on October 10, 1989. With October 10, 1989 as the date of sale, Kondrat's filing of the complaint on January 17, 1995 falls well outside the four-year limitation imposed by R.C. 1707.43.

In contradiction of this argument, Kondrat points out that he had not paid off the entire note used to finance the investment and that the sale of the investment, therefore, was not complete until the final payment was made. We disagree. The sale of the security was complete in 1989. That Kondrat was still paying off the financing loan did not affect the finality of that sale, nor does it affect the date the statute of limitations began to run. The payments were merely "the fulfillment of an obligation separate and apart from the sale." *Holloway v.*

---

**2.** Plaintiffs characterize the partnership interest they purchased as an unregistered security.

*Combined Equities, Inc.* (M.D.La. 1986), 628 F.Supp. 59, 61. Accordingly, plaintiffs have filed outside the four-year provision of R.C. 1707.43.

Plaintiffs' claim is also time-barred under the two-year discovery provision of R.C. 1707.43. Plaintiffs argue that they were not put on notice of the alleged unlawful acts any earlier than one of the following dates: (1) when Morris informed Kondrat in November 1993 that the partnership would not be sold, (2) when Kondrat consulted his attorney in 1994, or (3) when the Kondrats discovered that appellees' securities were not exempt from registration, a discovery alleged to have occurred after they filed their complaint. Plaintiffs' arguments are unavailing because the record shows that plaintiffs were on notice of any misrepresentations by defendants in the fall of 1989 when Paul Kondrat signed the subscription agreement and had in his possession the PPM, both of which repeated the high risks involved with this particular investment. ·

The basis of much of plaintiffs' case is that Morris guaranteed a two-to-one return on the investment. Even an unexperienced investor, as Kondrat describes himself, would be on notice of the inconsistency between defendants' alleged statements that the investment posed minimal risks or was guaranteed, on the one hand, and, on the other, the documents which unequivocally stated that the investment involved a high degree of risk.

Additionally, plaintiffs' claims for negligent investment advice regarding the sale of this investment are covered by the catchall provision of the general negligence statute, R.C. 2305.09(D). *Avery B. Klein & Co. v. Joslyn* (Apr. 8, 1993), Cuyahoga App. No. 61841, unreported, 1993 WL 106948. This statute provides as follows:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

" * * *

"(D) For any injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and 1304.35 of the Revised Code."

In *Avery B. Klein,* the cause of action for negligent investment advice accrued when the advice was given. Citing *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d' 176, 546 N.E.2d 206, the court held that the discovery provision does not apply to this statute. In the case at bar, defendants gave plaintiffs investment advice in 1989 at the time the partnership share was purchased. Accordingly, the filing of plaintiffs' complaint was outside the four-year statute of limitations. See, also, *Hater v. Gradison Div. of McDonald & Co. Securities, Inc.,* 101 Ohio App.3d 99, 655 N.E.2d 189, in which the court held that R.C. 2305.09 applied to claims of

professional negligence and that the statutory time period does not start over each time there is an alleged misrepresentation.

■   Similarly, any claim that the Homestead defendants were negligent in approving plaintiffs for the loan is time-barred under the four-year statute of limitations for general negligence found in R.C. 2305.09.

■   This same statute also covers any claim for breach of a fiduciary duty. *Crosby v. Beam* (1992), 83 Ohio App.3d 501, 615 N.E.2d 294; *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 120, 621 N.E.2d 897, 899–900.   Again, the discovery provision does not toll the statute of limitations for a claim of breach of fiduciary duty. *Herbert v. Banc One Brokerage Corp.* (1994), 93 Ohio App.3d 271, 275, 638 N.E.2d 161, 164.   Accordingly, judgment was properly granted to defendants on the first, second, third, fourth, fifth, seventh, eighth, ninth, and tenth counts of the complaint.   Plaintiffs' first assignment is overruled.

"II.   The trial court erred in granting appellees summary judgment because Morris' inducements and misrepresentations suspended the running of the statute of limitations and give rise to an independent cause of action."

■   In this assignment, plaintiffs argue that alleged misrepresentations by Morris suspended the running of any statute of limitations and created an independent cause of action.   Plaintiffs, however, have not produced any evidence of misrepresentations by Morris.   Kondrat admitted that his expected two-to-one return on his money was a projection.   Additionally, Kondrat admitted that there were no discrepancies between Morris's oral representations and the PPM. Mere predictions about the future are not actionable misrepresentations. *Link v. Leadworks* (1992), 79 Ohio App.3d 735, 607 N.E.2d 1140.   The court in *Platsis v. E.F. Hutton & Co., Inc.* (W.D.Mich.1986), 642 F.Supp. 1277, 1293, stated this proposition as follows:

"Plaintiff has also failed to prove that the representations, if false, constitute actual misrepresentations of fact.   To be actionable, a misrepresentation generally must relate to an existing or pre-existing fact which is susceptible of knowledge. *Higgins v. Lawrence*, 107 Mich.App. 178, 309 N.W.2d 194 (1981); 37 Am.Jur.2d *Fraud and Deceit* § 45.   A statement of opinion or belief such as occurs in 'puffing' generally cannot constitute a misrepresentation.   W. Prosser, The Law of Torts, § 10.9, at 726 (4 ed. 1971)."

Moreover, Kondrat himself stated that he did not believe that Morris was acting in bad faith.   Accordingly, plaintiffs have not produced any evidence of any misrepresentations that would toll the statute of limitations.   Plaintiffs' second assignment is overruled.

"III. The trial court erred in granting summary judgment to Franklin Credit regarding appellants' illegal debt collection claim."

In this assignment, defendant argues that the trial court erred by granting summary judgment for Franklin Credit on the illegal debt collection claim in count twelve of the complaint. As stated earlier, after Homestead Savings Association was taken over by the Resolution Trust Corporation, the Kondrat loan was assigned to Franklin Credit Management Association. Franklin Credit purchased the note from the Resolution Trust Corporation. After Kondrat failed to pay on the loan, Franklin Credit sent the two letters, dated March 10, 1994 and March 21, 1994 to Kondrat, informing him that his interest payments were past due. Kondrat acknowledged receiving both of these letters. On June 24, 1994, Franklin Credit sent a proposal for a modification agreement to Kondrat, who did not respond. The current balance remaining on the note is $23,983.99 plus interest from and after October 26, 1994, at the rate of 12.25 percent per annum.

In the complaint, Kondrat made the following allegation:

"70. Defendant Franklin Credit has made implicit threats in violation of Ohio law to Plaintiff Paul Kondrat and Plaintiff Barbara Kondrat during attempts to collect balances Defendant Franklin Credit claims due from Plaintiffs."

Kondrat claims that, in addition to these "threats," Franklin Credit reported Kondrat's problems to a credit bureau, resulting in Kondrat being denied a credit card. In his deposition, however, Kondrat admits that the threats were merely threats to file a lawsuit.

Plaintiffs have not alleged any actions that would constitute unfair debt collection practices. The Fair Debt Collection Act, Section 1692, Title 15, U.S.Code, prohibits illegal debt collecting practices by a debt collector. In the case at bar, Franklin Credit was merely trying to enforce an obligation assigned to it. Franklin Credit, as the holder of the mortgage and the one to whom the debt was payable, does not fall under the act's definition of a "debt collector." *Oldroyd v. Assoc. Consumer Discount Co./PA* (E.D.Pa. 1993), 863 F.Supp. 237; *Mendez v. Apple Bank for Sav.* (1989), 143 Misc.2d 915, 541 N.Y.S.2d 920. Moreover, threats to take legal action do not, in and of themselves, constitute conduct designed to harass, oppress, or abuse within the meaning of the Act. *Dorsey v. Morgan* (D.Md. 1991), 760 F.Supp. 509, 515. Therefore, the trial court did not err in granting Franklin Credit's motion for summary judgment.

"IV. The trial court erred in granting summary judgment to Franklin Credit because appellant's defenses to the note survive Franklin Credit's acquisition of the note."

Because of the resolution of the prior assignments of error, the fourth assignment regarding plaintiffs' alleged defenses to the note is rendered moot. See App.R. 12(A)(1)(c).

"V. The trial court erred in granting appellees' motions for summary judgment because genuine issues of material fact exist regarding appellants' statutory and common law claims."

In the first two assignments, we determined that summary judgment was properly granted to defendants on nine of the twelve counts of the complaint because of the statute of limitations. In the third assignment, we determined that summary judgment was properly granted for defendants on plaintiffs' illegal debt collection claim (count 12). Two counts remain: count six, which demanded an accounting of the partnership, and count eleven, which alleged a violation of state civil RICO laws. There is no genuine issue of material fact requiring reversal on these two counts. In their motion for summary judgment, defendants Homestead Equities, Inc., and Homestead Capital Corp. state that an accounting of partnership activities was provided in the partnership's answer to plaintiffs' interrogatories. Plaintiffs did not pursue this issue on appeal.

■ As to the other count, plaintiffs have not pled with sufficient specificity a cause of action for a state RICO violation. In count eleven, plaintiffs allege, in conclusory fashion, that defendants have engaged in a pattern of corrupt activity in the sale of the partnership interest. In order to allege a state RICO violation, the following elements must be pled with specificity: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32–33.

■ Plaintiffs have not pled these elements with the required specificity, nor have they presented any evidence on these elements to overcome defendants' motions for summary judgment. Just as merely alleging a fraudulent scheme was insufficient pleading for civil RICO in *Universal Coach,* plaintiffs' conclusory allegations of a pattern of corrupt activity are not sufficient to warrant reversal in the case at bar. Accordingly, plaintiffs' fifth assignment of error is overruled.

*Judgment affirmed.*

PORTER, J., concurs.

JAMES D. SWEENEY, P.J., concurs in judgment only.