OPINION
{¶ 1} Edward Sabo ("appellant") appeals the June 12, 2002 decision of the Geauga County Common Pleas Court. In that decision, the trial court found appellant, along with defendant Liberte Capital Group, to be jointly and severally liable to Donald Kuhn ("appellee") in the amount of $30,000. For the following reasons, we reverse the decision of the trial court in this matter as it relates only to appellant Edward Sabo.
 {¶ 2} The following facts were presented at trial. On June 3, 1996, during a visit to appellee's residence, appellant approached appellee with an investment opportunity. Appellant was in the business of selling interests in viatical settlements. Viatical settlements allow a terminally ill policyholder to sell discounted, pre-death shares of their existing life insurance policy in an attempt to finance their extensive medical expenses. Upon the demise of the policyholder, the purchaser of the shares receives a certain percentage of return on their investment.
 {¶ 3} During the June 3, 1996 meeting, appellant informed appellee that an AIDS patient with a life expectancy of approximately 18 months was willing to participate in a viatical settlement agreement. Upon hearing this information, appellee agreed to invest in the above-mentioned agreement. On June 3, 1996, appellee issued a bank check to appellant in the amount of $30,000. In issuing the check, appellee was purchasing $30,000 worth of shares in the AIDS patient's life insurance policy. In addition to the bank check, appellee and his wife, along with appellant, signed a "Living Needs Benefit Preference Form". The form indicated that appellee was instructing Liberte to invest $30,000 in an HIV/AIDS policyholder with a life expectancy of 18 months.
 {¶ 4} After issuing the check and signing the "Living Needs Benefit Preference Form", appellee received a confirmation notice on July 26, 1996, listing the value of his shares to be $36,144.58. Approximately 18 months later, appellee phoned appellant to check on the status of his investment. Although not immediately available, appellant ultimately received a fax on April 30, 1998, which indicated the AIDS patient had taken a turn for the better and was now given a life expectancy of "48-60 months." Subsequently, appellee read an article on June 2, 2000, indicating that the viatical agreements issued by the Liberte Capital Group were unregistered securities under R.C. 1707.01. Pursuant to R.C.1707.43, appellee filed an action for rescission of the viatical settlement on July 25, 2000. A hearing was held before the trial court on May 29, 2002. On June 12, 2002, the trial court found in favor of appellee. Although the Liberte Capital Group was found to be jointly liable to appellee, they did not appeal the trial court' s decision and are not a party to the instant appeal. This timely appeal followed, and appellant asserts the following assignment of error for our review:
 {¶ 5} "[1.] The trial court erred by finding that the plaintiff-appellee's claim was not barred by the statute of limitations."
 {¶ 6} More specifically, appellant argues that the trial court erred in finding that July 26, 1996, was the appropriate date to be used in calculating the four-year statute of limitations in this case.
 {¶ 7} The determination of the statute of limitations date by the trial court was a factual determination. Therefore, this court will not reverse the trial court if there is some competent, credible evidence going to all the essential elements of the case. Security Pacific Natl.Bank v. Roulette (1986), 24 Ohio St.3d 17, 20.
 {¶ 8} R.C. 1707.43 states in pertinent part: "Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. ***. No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."
 {¶ 9} Regardless of whether it was June or July of 1996, the trial court correctly found that the four-year period was the shorter period for purposes of calculating the statute of limitations under R.C. 1707.43. As a result, the sole issue in this appeal is whether June 3, 1996 or July 26, 1996 serves as the "date of such sale or contract for sale" under R.C. 1707.43.
 {¶ 10} In explaining the above-mentioned language, R.C.1707.01(C)(1) defines "sale" as follows: "Sale" has the full meaning of "sale" as applied by or accepted in courts of law or equity, and includes every disposition, or attempt to dispose, of a security or an interest in a security. "Sale" also includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, ***."
 {¶ 11} The trial court failed to provide any detail in its judgment entry to support its finding that July 26, 1996, is the date the statute of limitations began to run in this case. Appellant argues that appellee's issuance of the bank check on June 3, 1996, along with the signing of the "Benefits Preference Form", constitutes a sale within the meaning of R.C. 1707.01(C)(1). We agree with appellant.
 {¶ 12} Our review of the record indicates that at trial, appellee gave the following testimony as to the details of the June 3, 1996 meeting: "Ed (appellant) explained it that the gentleman had AIDS. He explained to us that he would be short term, because he had a T-cell count or content or whatever it was. ***." When asked about the "Benefits Preference Form", appellee stated: "That's the receipt that I got for the $30,000 for 18 months. ***. I signed it and my wife signed it." Appellee also acknowledged that the "Benefits Preference Form" was issued on June 3, 1996, at "the time we gave him the check." and that appellee was aware that the policyholder had AIDS and an 18-month life expectancy. Furthermore, appellee was asked the following: "Now, on June 3rd, when you signed that check and you received that pink copy, Exhibit 2, was there anything further that you needed to do in order to perfect the contract from your point of view?" Appellee's response to that question was "No."
 {¶ 13} Appellee argues that the sale of the policyholder's shares was not complete until July 26, 1996, when he received a letter listing the total value of his purchased shares, and as a result, the trial court's finding was correct. We do not agree with appellee.
 {¶ 14} Various courts have held that a sale of securities occurs, and the purchaser's cause of action accrues, when the subscription agreement is executed. Helman v. EPL Prolong, Inc., 139 Ohio App.3d 231,2000-Ohio-2593; Kondrat v. Morris (1997), 118 Ohio App.3d 198; State v.Detillo (1992), 90 Ohio App.3d 241. In this case, appellee subscribed to buy $30,000 worth of shares via the "Benefits Preference Form" on June 3, 1996. Furthermore, it has been held that the statute of limitations contained in R.C. 1707.43 "begins to run when the final act by which the sale is made, such as the act of final payment." Hild v. WoodcrestAssoc. (1977), 59 Ohio Misc. 13. The record also indicates that appellee performed the act of final payment on June 3, 1996.
 {¶ 15} In the case before us, appellee testified he was investing $30,000 in the life insurance policy of an AIDS victim with an 18-month life expectancy. Appellee also testified that on June 3, 1996, appellee issued a check to appellant, as well as signed and received a copy of the "Benefits Preference Form". In doing so, appellee directed Liberte to purchase $30,000 worth of shares in the policy of an AIDS victim with an 18-month life expectancy on his behalf. Appellee's receipt of the letter confirming the value of his shares on July 26, 1996, did nothing to change the fact that appellee had already subscribed and paid for his shares on June 3, 1996. In executing the "Benefits Preference Form" and issuing final payment on June 3, 1996, appellee had already satisfied the requirements of R.C. 1707.43, triggering the running of the four-year statute of limitations.
 {¶ 16} As a result, we conclude that the trial court's finding, that the statute of limitations began to run on July 26, 1996, is unsupported by competent, credible evidence. Under R.C. 1707.43, and the definition of "sale" contained in R.C. 1707.01(C)(1), the statute of limitations in this case began to run on June 3, 1996. Appellee should have filed his complaint by June 3, 2000. The record indicates that appellee did not file his complaint until July 25, 2000. As a result, the four-year statute of limitations had expired prior to appellee filing his complaint.
 {¶ 17} Based on the foregoing reasons, we hold that appellant's sole assignment of error is with merit. The June 12, 2002 decision of the Geauga County Common Pleas Court is hereby reversed as to appellant Edward Sabo, and this cause is remanded for proceedings consistent with this opinion.
JUDITH A. CHRISTLEY, P.J., and CYNTHIA WESTCOTT RICE, J., concur.