JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant Michael F. Patton ("Patton") appeals the decision of the court of common pleas granting summary judgment in favor of defendant-appellees, Eileen Hammon, Donald Stamper, Debra Hemann, Dawn Stamper, Robert Wilson, and David Hammon, Sr. (individually referred to by name or collectively referred to as "appellees"). Patton also appeals the decision of the court of common pleas denying his motion for summary judgment against defendant-appellee/cross-appellant Robert D. Wilson ("Wilson"). Wilson appeals the decision of the court of common pleas denying his motion for an award of attorney's fees for frivolous conduct. For the reasons stated below, we affirm the decisions of the trial court.
 {¶ 2} In 1996 and 1997, Patton made a series of loans to 3D Webservices, Inc. and Equitable Auto, Inc. (individually referred to by name or collectively referred to as "companies")[1]. Each loan was based on dealings with David Hammon, Sr. A forty percent (40%) interest rate per annum was assessed on each loan.
 {¶ 3} Unable to collect on the loans, Patton filed a collection action in the Cuyahoga County Court of Common Pleas[2]. On October 13, 1999, Patton was awarded default judgment in the amount of $80,435 plus ten percent (10%) interest per annum against the companies.[3] The companies have failed to satisfy this judgment.
 {¶ 4} On April 10, 2000, Patton filed suit in Cuyahoga County Court of Common Pleas[4] against the companies' shareholders in an attempt to pierce the corporate veil and collect on the judgment. On December 5, 2000, Eileen Hammon filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Northern District of Ohio.[5] Prior to the commencement of trial, Patton voluntarily dismissed his complaint.
 {¶ 5} On March 13, 2001, Patton commenced the lawsuit sub judice seeking damages pursuant to the Ohio civil RICO statutes. On March 26, 2001, Eileen Hammon received a discharge in bankruptcy. On July 17, 2001, the trial court converted Eileen Hammon's motion for summary judgment to a motion to dismiss and dismissed Patton's complaint based on lack of subject matter jurisdiction.[6] On May 3, 2002, the trial court granted Wilson's and Donald Stamper's motions for summary judgment.[7]
On June 11, 2002, the trial court granted Dawn Stamper's and Debra Hemann's motions for summary judgment. On October 22, 2002, the trial court denied Patton's motion for summary judgment against David Hammon, Sr. and granted David Hammon, Sr.'s motion for summary judgment.
 {¶ 6} On November 19, 2002, Patton timely filed his notice of appeal.
 I. {¶ 7} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 8} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330. The record on summary judgment must be viewed in the light most favorable to the opposing party. Williams v. First United Church ofChrist (1974), 37 Ohio St.2d 150.
 {¶ 9} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280. Thereafter, the nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C), showing a genuine issue for trial exists. Id. A motion for summary judgment forces the plaintiff to produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330. Plaintiff's evidence must be such that a reasonable jury might return a verdict in his favor. Seredick v. Karnok (1994),99 Ohio App.3d 502.
 {¶ 10} This court reviews the lower court's granting of summary judgment de novo. Ekstrom v. Cuyahoga County Community College (2002), 2002-Ohio-6228.
 II. {¶ 11} In his first assignment of error, Patton argues that the trial court erred, as a matter of law, by granting appellees' respective motions for summary judgment. For the reasons stated below, we affirm the decisions of the trial court.
 {¶ 12} Under the Ohio civil RICO statute, R.C. 2923.32(A)(1), "No person employed by, or associated with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." In order to prove liability under this statute, a plaintiff must establish: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.Kondrat v. Morris (1997), 118 Ohio App.3d 198, 209; Universal Coach v.NYC Transit Auth. (1993), 90 Ohio App.3d 284, 291. A plaintiff must plead these elements with specificity and present sufficient evidence in order to overcome a defendant's motion for summary judgment. Kondrat v. Morris
at 209.
 {¶ 13} In an attempt to satisfy the first element of the Kondrat
test, and pursuant to R.C. 2913.02(A)(3), Patton argues appellees are guilty of multiple counts of theft by deception. R.C. 2913.02(A) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." As evidence of the offenses, Patton argues the trial court's verdict[8] establishes that the companies "exerted control," by and through appellees, over the property of Patton. More specifically, Patton argues that because "it is clear that these loans were not repaid, [the failure to repay] constitute[d] a felony under Ohio law as memorialized by Plaintiff-Appellant's 1999 civil judgment." We disagree.
 {¶ 14} Patton has failed to establish that appellees had a "purpose to deprive" him of "property or services" by "deception." R.C.2923.02(A). Patton incorrectly assumes that the default of Equitable Auto, Inc. and 3D Webservices, Inc. was evidence of appellees theft by deception individually.[9] The trial court found the following:
"Filing date 10/13/99 case called for trial. Defts 3D-Webservices, Inc and Equitable Auto Inc failed to appear through representatives or through counsel. Evidence taken. Judgment rendered in favor of Pltf agst deft Equitable Auto in the amount of $32,500 plus 10% interest from 11-16-98 and $47,935 plus 10% from 11-16-98 plus costs. Final."
 {¶ 15} The failure of the companies to pay back the loans does not, by itself, support a finding under R.C. 2913.02(A) against the appellees. The status of judgment debtor does not imply, per se, theft by deception.
 {¶ 16} R.C. 2913.02(A) requires finding a person with a "purpose" "knowingly" obtained or exerted control by "deception." The trial court entry granting default judgment speaks nothing of appellees' purpose or knowledge. Patton offers no testimony, or other evidence, in his briefs to substantiate a claim against appellees for theft by deception.
 {¶ 17} Patton's actions in loaning the money further undermine his position that he was deceived by appellees. During a nine (9) month period, Patton executed five (5) loans involving substantial amounts of money. These loans were neither memorialized by an instrument nor guaranteed or cosigned. Aware of the apparent risks associated in loaning this money, Patton acknowledged loaning the funds accompanied by a forty percent (40%) interest rate. Although Patton alleges that he was fraudulently induced to make these loans, he has failed to provide any affirmative proof in support of these allegations. Patton has failed to produce probative evidence in satisfaction of the first element underKondrat, supra.
 {¶ 18} In regard to the second and third elements of the Kondrat
test, whether the prohibited criminal conduct of the defendant constituted a pattern and a participation in the affairs of an enterprise, Patton has failed to establish a genuine issue of material fact. Even assuming, arguendo, Patton had met his burden under the first two elements of the Kondrat test, Patton has failed to establish that the appellees participated in the affairs of an enterprise.
 {¶ 19} Under Kondrat, the third element that must be satisfied is that the defendant participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. Patton argues that the "enterprise" requirement is satisfied by identifying "a group of individuals associated in fact." State v. Post, (Sept. 20, 1996) Lucas Cty. No. L-95-153. Further, Patton reasons "the substantive provisions of the RICO statute apply to insiders and outsiders, those merely `associated with' an enterprise who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity." State v. Siferd, 2002-Ohio-6801.
 {¶ 20} This court has held that an enterprise must be a separate entity that acts apart from the pattern of activity in which it engages.U.S. Demolition Contracting, Inc. v. O'Rourke Constr. Co. (1994),94 Ohio App.3d 75, citing Old Time Enterprises, Inc. v. Internatl. CoffeeCorp (C.A. 5, 1989), 862 F.2d 1213. A pattern of racketeering activity alone is insufficient to establish an enterprise. Id. Although Patton is correct that a corporation may be part of an enterprise, the enterprise may not simply be composed of a corporation and its officers or employees. Id. at 85.
 {¶ 21} Patton has failed to establish that the appellees were part of an entity separate and apart from the companies. There has been no evidence provided, other than through speculation, to indicate appellees associated outside the scope of their employment for the purpose of depriving Patton of anything.
 {¶ 22} Patton's first assignment of error is overruled.
 III. {¶ 23} In his second assignment of error, Patton argues that "[t]he Trial Court erred, as matter of law, by denying Plaintiff-Appellant's Motion for Summary Judgment (and Motion for Reconsideration thereon) against Defendant-Appellee David Hammon, Sr." For the reasons stated in Section II of this opinion and below, appellant's assignment of error is overruled.
 {¶ 24} Patton argues "Hammon refused to testify at deposition, and has offered no evidence — even a denial of the allegations — contrary to that set forth by Plaintiff-Appellant." Under these circumstances, a negative inference against appellee Hammon, Sr. is appropriate. Farace v. Independent Fire Ins. Co. (5th Cir. 1983),699 F.2d 204. As the moving party, however, Patton has the burden of establishing that he is entitled to judgment as a matter of law. Templev. Wean United, Inc. (1977), 50 Ohio St.2d 317. As discussed above, Patton has failed to establish the requisite elements for a finding of liability under Ohio's civil RICO statutes against appellees, including David Hammon, Sr. The trial court was correct in denying his motion for summary judgment.
 {¶ 25} The court reviews Patton's motion for reconsideration under a de novo standard. Evans v. Dianna's Deli Rest. Grill,
2003-Ohio-1173. In light of our previous analysis, the trial court did not err when it denied Patton's motion for reconsideration.
 {¶ 26} Patton's second assignment of error is overruled.
 IV. {¶ 27} Defendant-appellee/cross-appellant Robert Wilson ("Wilson"), seeks review of whether the trial court "abused its discretion and erred as a matter of law when it denied Defendant's Motion for Award of Attorney's Fees for Frivolous Conduct pursuant to Ohio Civil Rule 11, O.R.C. 2323.51 and O.R.C. 2923.34(H), after granting Defendant's Motion for Summary Judgment in a civil RICO action." For the reasons stated below, we affirm the decision of the trial court.
 {¶ 28} Wilson has been a duly licensed attorney in Ohio since 1984. He performed legal work for Equitable Auto, Inc. and 3D Webservices, Inc., including the preparation and filing of the companies' articles of incorporation.[10] Wilson argues he never served as an owner, director, officer, employee, or agent of either company and therefore was improperly and frivolously included in the pleadings.
 {¶ 29} The standard of review for this court is one of an abuse of discretion. An abuse of discretion implies more than an error of law or judgment. Abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberlyv. Hendricks (1994) 98 Ohio App.3d 839, 845. The Ohio Supreme Court has explained as follows:
"An abuse of discretion involves far more than a difference inopinion. The term discretion itself involves the idea of choice, of anexercise of will, of a determination, made between competingconsiderations. In order to have an `abuse' in reaching suchdetermination, the result must be so palpably and grossly violative offact and logic that it evidences not the exercise of will but theperversity of will, not the exercise of judgment but the defiancethereof, not the exercise of reason but rather of passion or bias."Huffman v. Hair Surgeons, Inc. (1985), 19 Ohio St.3d 83, 87.
 {¶ 30} When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. In reJane Doe 1 (1991), 57 Ohio St.3d 135, 137-138.
 {¶ 31} The trial court did not abuse its discretion by denying Wilson's request. R.C. 2923.34(H) provides that a court "may grant a defendant who prevails in a civil action pursuant to this section all or part of his costs * * *." The trial court had full discretion in this regard. Although the trial court could have awarded fees and costs, its failure to do so does not amount to an abuse of discretion.
 {¶ 32} Wilson's sole assignment of error is overruled.
 V. {¶ 33} In conclusion, the court finds that the trial court properly granted the appellees' motions for summary judgment, denied plaintiff-appellant's motion for summary judgment, and denied defendant-appellee/cross-appellant's motion for an award of attorney's fees.
Judgment affirmed.
FRANK D. CELEBREZZE, JR., P.J. and DIANE KARPINSKI, J. CONCUR
[1] Patton issued three (3) loans to Equitable Auto, Inc., to wit: July 26, 1996 in the amount of $10,000; October 7, 1996 in the amount of $20,000; and April 12, 1997 in the amount of $2,500. Patton made two (2) loans to 3D Webservices, Inc., to wit: March 28, 1997 in the amount of $17,935 and April 24, 1997 in the amount of $30,000.
[2] Patton v. Equitable Auto, Inc., et al., Case No. 369703.
[3] $32,500 of the judgment was against Equitable Auto, Inc. and $47,935 was awarded against 3D Webservices, Inc.
[4] Patton v. Hammon, et al., Case No. 405883.
[5] Bankruptcy Case No. 00-19216.
[6] Because appellant failed to assign error to the granting of Eileen Hammon's motion to dismiss, this court will not address the validity of the trial court's ruling. App.R. 12(A)(2).
[7] Donald Stamper's motion for summary judgment was unopposed and granted.
[8] In Patton v. Equitable Auto. Inc., et al., Cuyahoga County Common Pleas Court Case Number 369703.
[9] Patton previously filed suit against the companies' shareholders, Cuyahoga County Common Pleas Case No. 405883, in an attempt to pierce the corporate veil. Patton voluntarily dismissed his complaint prior to the lower court ruling on a pending motion for summary judgment.
[10] On 2-12-93, Wilson filed the articles of incorporation for Glamour Marketing, Inc. In 1995, Wilson filed an amendment to the articles changing the name of Glamour to Equitable Auto, Inc. On 3-19-97, Wilson prepared and filed the articles of incorporation for 3D Webservices, Inc.