WILSON, Appellant,

v.

MARINO et al., Appellees.

[Cite as *Wilson v. Marino,* 164 Ohio App.3d 662, 2005-Ohio-6521.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–04–1330.

Decided Dec. 9, 2005.

664

David R. Pheils Jr., and Patrick R. Millican, for appellant.

Rudolph A. Peckinpaugh Jr. and Michael R. Barnett, for appellee Walter P. Grady, D.C.

Timothy D. Krugh, for appellees Dee Marino, Toledo Hospital, and Promedica Health System.

_____

PARISH, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas granting summary judgment to appellees, Dee Marino, Toledo Hospital, Promedica Health System ("Promedica"), and Walter P. Grady, D.C.,[1] and dismissed a complaint filed by appellant, Sandra Wilson. On appeal, appellant sets forth the following assignments of error and issues:

{¶ 2} "First Assignment of Error and Issues

{¶ 3} "1. The trial court erred in granting defendants summary judgment on counts one, two, three, four, and ten of the plaintiff's complaint.

{¶ 4} "Issue One:

{¶ 5} "Was Defendant Marino's overruling of Dr. Jagger's order for physical therapy by directing Sandra to undergo chiropractic care from Defendant Grady instead a breach of duty to Sandra?

{¶ 6} "Issue Two:

_____

1. For purposes of clarity, throughout this opinion appellees Marino, Toledo Hospital, and Promedica will be referred to collectively as "appellees" and appellee Walter Grady will be referred to as "Grady."

{¶ 7} "Did such Defendant Marino's conduct constitute prescribing, advising or recommending treatment for the cure of Sandra's bodily injury?

{¶ 8} "Issue Three

{¶ 9} "Did Defendant Marino's administering of Defendant Toledo Hospital/Promedica Health System's self-insured Workers' compensation obligations constitute a dual capacity precluding the application of the work-related injury immunity provisions of the Ohio Workers' Compensation Act?

{¶ 10} "Issue Four:

{¶ 11} "Did Sandra's right as an adult patient to refuse treatment and her failure to disobey Defendant Marino's direction to submit to chiropractic treatment bar her claims?

{¶ 12} "Issue Five:

{¶ 13} "Does Defendant Marino's liability for her negligence in overruling Dr. Jagger's order for physical therapy by directing Sandra to undergo chiropractic care from Dr. Grady instead require that Dr. Grady be an incompetent chiropractor and that Defendant Marino knew or should have known of such incompetence?

{¶ 14} "Issue Six:

{¶ 15} "Does the jury's finding that Defendant Grady was not negligent preclude the other Defendants' argument that Defendant Grady's negligence was an efficient, independent and self-producing cause of Sandra's injuries?

{¶ 16} "Issue Seven:

{¶ 17} "Did Sandra submit evidence that Defendants Marino, Toledo Hospital/Promedica Health System and Grady constituted an enterprise engaged in a pattern of corrupt activity, involving multiple violations of O.R.C. § 4731.34(A)(3)(b) and .41?

{¶ 18} "Second Assignment of Error and Issues

{¶ 19} "II. The trial court erred by granting the defendant-appellee's motion to exclude testimony of plaintiff-appellant's expert witness regarding the standard of care.

{¶ 20} "Issue One:

{¶ 21} "Did a prior opinion and judgment entry establish that Plaintiff–Appellant's expert witness was qualified to testify as to the standard of care?

{¶ 22} "Issue Two:

{¶ 23} "Was Plaintiff–Appellant's expert qualified to testify as to the chiropractic standard of care?

{¶ 24} "Issue Three:

{¶ 25} "Was Plaintiff–Appellant's expert qualified to testify as to the general standard of care?"

{¶ 26} The undisputed, relevant facts are as follows. On June 8, 1999, appellant was injured while working as a nursing assistant at Toledo Hospital. The next day, appellant was examined and evaluated at OccuHealth, a facility operated by Toledo Hospital, by James Jagger, M.D. The nurse's note from June 9, 1999, states that appellant complained of "severe pain in lower back going into buttocks." After examining appellant, Jagger prescribed medication and physical therapy and ordered an x-ray of appellant's lower spine.

{¶ 27} Later that day, appellant contacted Judy Delores ("Dee") Marino, a worker's compensation specialist at Toledo Hospital, who offered appellant the option of chiropractic treatment instead of physical therapy. With appellant's permission, Marino scheduled an appointment for appellant to see Walter P. Grady, D.C., on June 10, 1999. Treatment on that date consisted of manipulation of appellant's spine and surrounding muscles. Grady did not order additional x-rays of appellant's spine and did not review the report interpreting results of the x-rays ordered by Jagger.

{¶ 28} On June 16, 1999, appellant returned to OccuHealth, where she was again examined by Jagger. At some time during the visit, appellant told Jagger she was receiving chiropractic treatment from Grady in lieu of physical therapy. Jagger told appellant she could not be treated by two physicians at the same time. Later that afternoon, appellant returned to Grady's office where Grady performed manipulations of her spine and deep massage of the muscles of her lower back and right hip with a vibrating machine.

{¶ 29} Grady's medical notes from June 16, 1999, show he released appellant to resume work on June 18, without restrictions. However, on June 17, 1999, appellant told Marino she would not return to Grady's office and demanded to be transferred back to Jagger's care. Appellant was given an appointment at OccuHealth on June 21, 1999; however, since Jagger was on vacation, appellant was examined by Elizabeth Huntoon, M.D. Appellant told Huntoon that she began experiencing excruciating pain in her right hip after her last visit to Grady on June 16, 1999. Huntoon ordered an MRI and x-rays, and prescribed physical therapy and pain medication.

{¶ 30} On June 23, 1999, appellant was examined by Jagger, who referred her to Michael Diment, M.D., an orthopedic surgeon. On July 12, 1999, Diment injected appellant's hip with a corticosteroid medication; however, the injection provided only temporary pain relief. Diment diagnosed appellant's condition as inflammation of the greater trochanteric bursa of the right hip, and, on Septem-

ber 9, 1999, Diment performed surgery to remove the bursa. After surgery, appellant continued to experience severe, radiating pain and swelling of the right hip and leg. Appellant consulted with several pain-management specialists and received more injections. She was eventually diagnosed with complex regional-pain syndrome, also known as reflex sympathetic dystrophy ("RSD"), a condition of unknown origin typified by chronic, intractable pain.

{¶ 31} On June 7, 2000, appellant filed a complaint against Marino and Toledo Hospital and its parent company, Promedica, along with Huntoon, OccuHealth and Grady (case No. 2000–CI–2892). The complaint was dismissed without prejudice in March 2002 and refiled on January 28, 2003. Counts one, two, three, four, seven, eight, and nine collectively alleged that appellees were negligent in sending appellant to Grady for treatment, in violation of Jagger's orders. Counts five and six contained allegations that Grady was negligent in his treatment of appellant's injury. Count ten stated that, by referring injured workers to Grady, appellees were engaged in a pattern of "racketeering activity in violation of RICO statutes." Answers were filed by appellees and Grady on February 25, 2003, and April 1, 2003, respectively. On April 7, 2003, all discovery from case No. 2000–CI–2892 was ordered transferred into and made a part of this action.

{¶ 32} On December 18, 2003, appellees filed a motion for summary judgment and a memorandum in support thereof, in which they asked the trial court to dismiss counts one, two, three, nine, and ten. Attached to appellees' memorandum were copies of answers given during discovery and the deposition testimony of appellant, Grady, and Marino, along with Marino's sworn affidavit. Occu-Health and Huntoon also joined in the motion for summary judgment. However, on February 26, 2004, and March 25, 2004, respectively, appellant voluntarily dismissed the claims against OccuHealth and Huntoon raised in counts seven and eight of the refiled complaint.[2]

{¶ 33} In answers to interrogatories, appellees stated that Marino was a salaried employee of Toledo Hospital. Appellees further stated that Grady did not receive compensation directly from Marino for treating injured workers, and Grady did not compensate Marino for referring injured workers. Marino's job description, which was attached to appellees' answers, stated that her duties included "[assisting] associates in filing workers' compensation claims."

{¶ 34} Grady stated in his deposition that appellant initially complained of pain in her lower back and right hip on June 10, 1999. Grady stated that he did not order x-rays, but relied on his examination in determining that appellant had

---

**2.** Because those claims were ultimately dismissed, the issues raised in appellees' motion for summary judgment as to counts seven and eight, along with any evidence in support of those issues, need not be addressed by this court on appeal.

sacroiliac, i.e., lower-back pain and some loss of muscle strength. Grady further stated that on June 14, 1999, appellant told him she was walking and sleeping better. Grady stated that Marino has recommended his services to between one and ten patients, he is an independent, licensed chiropractor, not an employee of Toledo Hospital, and he first learned that appellant was unhappy on June 22, 1999, when Marino told Grady that appellant had accused Grady of hurting her.

{¶ 35} Appellant stated in her deposition that she had a prior workers' compensation claim against Toledo Hospital, following a back injury in January 1999, after which Marino assigned her "light duty work" at OccuHealth for several months. As to her present injury, appellant stated that she telephoned Marino on June 9, 1999, to set up an appointment for physical therapy and arrange for light duty after her current injury. However, Marino said, "I'm not going through this shit again. * * * I want you to go ahead and see a chiropractor that I will call and make the appointment for." Appellant said she did not question Marino's recommendation, because Marino is the person who sees "that the employees are taken care of as far as an injury goes * * *."

{¶ 36} Appellant stated that she had pain in her lower back on June 9, 1999, and it was Grady's "rubbing" of her hip muscle, not the vibrating massage therapy, that caused her pain on June 16, 1999. Appellant stated that she would not have had surgery or developed RSD if Grady had not injured her hip during treatment. She admitted that Marino never touched her in order to provide medical care or physical therapy, and she could not state a basis for the RICO claim.

{¶ 37} In her deposition, Marino testified that her goal as a workers' compensation specialist is to return injured employees to work as soon as possible and that she receives no extra compensation for recommending any type of treatment, including chiropractic. Marino further stated that she reviews medical notes submitted for payment by providers to determine if services were medically necessary; however, she has no control over how much Grady or any medical provider is actually paid.

{¶ 38} In her affidavit, Marino stated that her job consists of assisting injured workers with their workers' compensation claims by helping them obtain "access to health care providers and services." Marino further stated that she never held herself out to be a medical practitioner and never "prescribed, advised, recommended, administered, or dispensed * * * a drug or medicine, appliance, mold or cast, application, operation, treatment for the cure or relief of a wound, fracture, or bodily injury, infirmity, or disease." In fact, she did not recommend or provide a particular treatment for appellant, other than informing appellant that she could choose between physical therapy and chiropractic treatment for her

work-related injury and commenting that "some of our people have had good results with Dr. Grady."

{¶ 39} On December 29, 2003, Grady filed a motion for partial summary judgment and a memorandum in support, in which he asked the trial court to dismiss appellant's federal and state RICO claims. In support, Grady relied on appellant's answers to interrogatories and her deposition testimony, in which she failed to state a legal basis for her RICO claim. Appellant responded to Grady's motion by arguing that a proper response was impossible "due to the lack of discovery and the [court's] refusal to order discovery." Appellant did not refer to portions of the record in support of her argument, and no additional evidence was attached to her response.

{¶ 40} On July 1, 2004, appellant filed a response in opposition to appellees' motion for summary judgment. In support, appellant relied on her own deposition testimony, in which she stated that Marino told her to "go ahead and see a chiropractor" and to "forget PT and go see Dr. Grady." Appellant also stated that Dr. Jagger "blew his lid" and blamed Marino for sending appellant to a chiropractor. Finally, appellant relied on Marino's affidavit, in which Marino admitted recommending several injured workers to Grady for treatment.

{¶ 41} On August 4, 2004, the trial court granted appellees' motion for summary judgment and dismissed all of appellant's remaining claims against appellees. On August 19, 2004, the trial court granted Grady's motion for partial summary judgment and dismissed appellant's RICO claim against Grady, as set forth in count ten of the refiled complaint.[3] The remaining issue of Grady's negligence proceeded to a jury trial, which commenced on August 30, 2004.

{¶ 42} On the first day of trial, Grady filed a motion to exclude Diment's testimony as to the chiropractic standard of care, pursuant to Evid.R. 702(B).[4] Arguments were presented by both parties as to Diment's expert qualifications. The trial court found that Diment's "sole basis for knowing the standard [for chiropractic care] is his observation of watching a chiropractor at a football game" and concluded that Diment had "neither specialized knowledge, experience, or education in the chiropractic field to render such an opinion." Grady's motion to prohibit Diment from testifying against Grady as an expert on the standard of chiropractic care was granted.

---

3. Count ten also contained a RICO claim against appellees, the disposition of which is fully discussed later in this opinion.

4. Grady also claimed that Diment was not qualified as an expert medical witness under Evid.R. 601; however, that claim was later withdrawn.

{¶ 43} At trial, testimony was presented by appellant and Grady, along with edited portions of Diment's deposition testimony.[5] On September 2, 2004, the jury found that Grady was not liable for appellant's injuries. A timely notice of appeal was filed on September 20, 2004.

{¶ 44} In her second assignment of error, appellant asserts that the trial court erred by excluding Diment's testimony as to the chiropractic standard of care at Grady's jury trial. As set forth above, the jury found that Grady was not negligent. Since appellant's claims against appellees depend on the jury's finding, we will address this assignment of error first.

{¶ 45} Appellant argues that because the trial court found Diment to be competent as an expert medical witness in case No. 2000–CI–2892, Grady was precluded by res judicata from challenging Diment's testimony in this case. In support, appellant cites portions of the record in case No. 2000–CI–2892, in which the trial court found that an affidavit containing Diment's expert medical opinion was sufficient to withstand Grady's motion to dismiss.

{¶ 46} It is well settled that a plaintiff's voluntary dismissal of an action without prejudice puts the parties in the same position as if the case had never been filed. *Lovins v. Kroger Co.*, 150 Ohio App.3d 656, 2002-Ohio-6526, 782 N.E.2d 1171, ¶ 6. Accordingly, any judicial rulings made prior to the dismissal cannot be used to bar a later action on the grounds of res judicata, collateral estoppel, or law of the case. Id. at fn. 3, citing *Giambrone v. Spalding & Evenflo Co., Inc.* (Apr. 18, 1997), Miami App. No. 96CA08, 1997 WL 189465.

{¶ 47} As set forth above, case No. 2000–CI–2892 was dismissed without prejudice by appellant in March 2002. Appellant's first argument is without merit.

{¶ 48} Appellant next argues that the trial court should have found that Diment was qualified to give his expert opinion as to the chiropractic standard of care at Grady's trial.

{¶ 49} We note at the outset that it is the trial court that determines whether an individual qualifies as an expert. That determination will not be overturned, absent a finding of abuse of discretion. *Porter v. Sidor*, 8th Dist. No. 84756, 2005-Ohio-776, 2005 WL 433520, at ¶ 6, citing *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the

---

**5.** Other witnesses testified at Grady's trial; however, as set forth above, only those portions of the record that are directly relevant to the issues raised on appeal are referred to in this opinion.

trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 50} Pursuant to Evid.R. 702(B), a witness who is otherwise qualified may testify as an expert if he or she possesses "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Formal certification or specialized training is not required, and " 'the witness need not be the best witness on the subject.' " *Porter,* supra, at ¶ 7, quoting *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 159, 10 O.O.3d 332, 383 N.E.2d 564. In cases in which the fields of medicine overlap and more than one type of specialist can perform the treatment in question, a witness may be qualified to testify as an expert, even if he or she does not practice in the same medical specialty. Id., citing *Alexander,* supra, at 158, 10 O.O.3d 332, 383 N.E.2d 564. However, the witness must possess knowledge that "will aid the trier of fact in performing its fact-finding function." Id., citing *State v. Baston* (1999), 85 Ohio St.3d 418, 423, 709 N.E.2d 128.

{¶ 51} Diment admitted in deposition that he is an orthopedist, not a licensed chiropractor, has not studied chiropractic techniques, does not practice applied kinesiology or employ spinal manipulation or other chiropractic modalities, and is not a member of any chiropractic organizations or associations. Diment further stated that chiropractic care has a role in treating patients; however, he could not define the term "chiropractic medicine." Diment also stated that his knowledge of chiropractic methodology was obtained through observation of a chiropractor who, along with Diment, cared for athletic teams at a local high school from 1992 to 2000. Diment said that, although the standard of care is the same in some areas of medicine, "it's probably hard to make such a blanket statement that all medical care providers should, should [sic] follow some sort of standard."

{¶ 52} As set forth above, after reviewing Diment's deposition and hearing counsel's arguments, the trial court concluded that Diment was not qualified to testify as to the standard of chiropractic care, because he had "neither specialized knowledge, experience, or education in the chiropractic field." On consideration, we find that the record supports the trial court's conclusion. Appellant's second argument is without merit.

{¶ 53} Finally, appellant argues that the trial court erred by not allowing the jury to hear those portions of Diment's testimony relating to the general standard of medical care. A review of the record shows otherwise.

{¶ 54} Before Diment's video deposition was played for the jury, the trial court gave the jury a limiting instruction, as follows:

Dr. Diment's opinions are presented in this case regarding causation and standard of care applicable to medical care providers, but you may not consider

any opinion he renders regarding the standard of care of chiropractors or Dr. Grady's compliance with the standard of care for chiropractors.

{¶ 55} Diment's edited video deposition was played for the jury. In it, Diment testified that all health care providers should listen to the patient's complaint and then perform an examination to "narrow down" the cause of the problem. He also stated that an x-ray should be taken if the patient's physical examination does not yield a definitive diagnosis. Diment further stated that all health care practitioners should "know their limitations" in treating patients. Diment testified that appellant's bursitis was caused by Grady's treatment; however, her postsurgical pain was due to the development of RSD.

{¶ 56} On cross-examination, Diment stated that Grady should have known that hip massage was not an appropriate treatment for appellant's medical condition. He further stated that there was a "loose body" in appellant's hip that contributed to the development of bursitis; however, he could not determine if Grady's treatment caused the "loose body" to develop. On redirect, Diment testified, "[T]here is a direct relationship between [appellant's] work related injury, her subsequent chiropractic treatment, and her subsequent surgical treatment."

{¶ 57} The record clearly shows that the jury heard Diment's opinions as to both the general medical standard of care and the effect that Grady's treatment had on appellant's back and hip, and rejected them. Appellant's third argument is without merit.

{¶ 58} On consideration of the foregoing, we find that the trial court did not abuse its discretion by excluding Diment's expert opinion as to the standard of chiropractic care and did not improperly limit Diment's testimony as to the general medical standard of care. Appellant's second assignment of error is not well taken.

{¶ 59} In her first assignment of error, appellant asserts that the trial court erred by granting summary judgment to appellees and dismissing counts one, two, three, four, and ten of the complaint. In support, appellant argues that the record contains sufficient evidence to demonstrate issues of fact as to (1) whether Marino practiced medicine without a license, (2) whether Marino breached a duty of care to appellant, (3) whether Toledo Hospital is immune from liability for Marino's negligence under the "dual-capacity doctrine," (4) whether appellant's consent to Grady's treatment negates appellees' liability, (5) whether Grady's "incompetence" negates appellees' duty to appellant, (6) whether the jury's finding that Grady was not negligent precludes appellees' defense that Grady was the "efficient, independent and self-producing cause" of appellant's injuries, and (7) whether appellees and Grady were engaged in a pattern of corrupt activity in violation of R.C. 2923.31 and 2923.32.

{¶ 60} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment will be granted when there remains no genuine issue of material fact and when after construing the evidence most strongly in favor of the nonmoving party, reasonable minds can conclude only that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Only those factual disputes that have the potential to affect the outcome of a lawsuit are material. *Spence v. Oberlin Laundry & Dry Cleaners, Inc.* (Oct. 7, 1998), 9th Dist. No. 97CA006913, 1998 WL 696849, citing *Orndorff v. ALDI, Inc.* (1996), 115 Ohio App.3d 632, 635, 685 N.E.2d 1298.

{¶ 61} As to appellant's first argument, the practicing of medicine or surgery by any person who does so "without the appropriate certificate from the state medical board to engage in the practice" is prohibited in Ohio. R.C. 4731.41. People are considered to be engaging in the practice of medicine if they (1) use the words "Dr." or "Doctor," or any other title intended to represent that the person is practicing medicine, (2) examine and/or diagnose illness or injury for compensation of any kind, or (3) prescribe, advise, recommend, administer, or dispense "for compensation of any kind, direct or indirect, a drug or medicine, appliance, mold or cast, application, operation, or treatment, of whatever nature, for the cure or relief of a wound, fracture or bodily injury, infirmity, or disease." R.C. 4731.34; *State v. Crock* (June 28, 2000), 7th Dist. No. 273, 2000 WL 875363.

{¶ 62} Appellant asserts that Marino's conduct violates R.C. 4731.41 because it amounts to "prescribing, advising and/or recommending treatment for [appellant's] bodily injury different than that prescribed by Dr. Jagger." This claim is erroneous for the following reasons.

{¶ 63} The record shows that Marino mentioned Grady's treatment to appellant as an alternative to physical therapy, and appellant testified that she followed Marino's suggestion. At that point, similarity between the circumstances of this case and the scenarios described by R.C. 4731.34 ends. No evidence was presented that Marino was ever charged with, let alone convicted of, a violation of R.C. 4731.41. In fact, such a criminal charge, if made, would be completely unwarranted because (1) Marino never used the words "Dr." or "Doctor" or any other designation calculated to represent that she is engaged in the practice of medicine, (2) no evidence was presented that Marino examined appellant, diagnosed her injury, or knew in advance what chiropractic modality Grady would use in treating appellant, and (3) Marino gave unrebutted testimony that she received no extra compensation from her employer or Grady for giving Grady's name to

appellant and she did not know whether Grady's treatment was more or less expensive than physical therapy.

{¶ 64} In addition, at the hearing on appellees' motion for summary judgment, the trial court inquired of appellant's counsel as to whether the act of referring an acquaintance or co-worker to a medical practitioner constitutes a violation of R.C. 4731.41. The relevant portions of that inquiry are as follows:

{¶ 65} "The Court: [Counsel] [h]ave you ever recommended a friend or colleague * * * to see a doctor, podiatrist, orthopedic, anybody that you have seen?

{¶ 66} " * * *

{¶ 67} "[Counsel]: Oh, sure, I recommend my doctors to people.

{¶ 68} "The Court: Is that treatment?

{¶ 69} "[Counsel]: Absolutely not."

{¶ 70} After engaging in the above discussion and considering the evidence presented, the trial court concluded that Marino's suggestion that appellant see Grady for treatment did not amount to "advising, prescribing or recommending" a specific medical treatment by an unlicensed individual in violation of R.C. 4731.41. On consideration, we agree. Appellant's argument is without merit.

{¶ 71} Appellant next argues that an issue of fact remains as to whether Marino violated hospital policy, and therefore breached a duty to appellant, by "overriding" Jagger's order for physical therapy and directing appellant to see Grady.

{¶ 72} It is well settled that before a plaintiff can prevail in a negligence action, it must be shown "that the defendant breached a duty it owed to [the plaintiff] and that the breach was the proximate cause of [plaintiff's] injuries." *Orndorff*, supra, 115 Ohio App.3d at 635, 685 N.E.2d 1298. There is no one formula for determining whether a duty exists. Rather, "it is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, quoting Prosser, Law of Torts (4th Ed.1971) 325–326.

{¶ 73} The record contains the deposition testimony of Kenneth Trachel, legal counsel for Toledo Hospital,[6] in which Trachel was asked by appellant's counsel whether Marino violated hospital policy by "ignoring" Jagger's orders. Trachel

---

6. Trachel's deposition was entered into the record as an attachment to appellees' memorandum in opposition to appellant's motion for sanctions pursuant to Civ.R. 37(D). The trial court's ultimate resolution of that motion is not at issue in this appeal.

replied: "I don't believe we ignored physician orders in this instance. I believe if Dr. Jagger wrote an order for Sandra Wilson to have physical therapy and she went to a chiropractor instead, she ignored the doctor's orders." When asked whether Marino "approved" appellant's deviation from Jagger's orders, Trachel responded: "I don't—I wouldn't characterize it as Dee Marino approved Sandra Wilson ignoring Dr. Jagger's orders. She explained to her what her options were."

{¶ 74} In addition to Trachel's testimony, as set forth above, Jagger prescribed physical therapy for appellant's prior back injury in January 1999. After receiving therapy, appellant was successfully treated and returned to work. When appellant reinjured her back in June 1999, she went first to Jagger, and then to Grady, for treatment. It is undisputed that appellant was treated by both Jagger and Grady until June 16, 1999, when Jagger told appellant she could not be treated by two physicians at the same time. Later that same day, appellant chose to return to Grady for treatment. Appellant testified that severe pain did not develop in her hip until Grady treated her on June 16, 1999.

{¶ 75} On consideration, we find that the record contains no evidence that Marino violated hospital policy by suggesting that appellant seek chiropractic treatment for her work-related injury. The record does, however, contain evidence that appellant voluntarily returned to Grady for treatment on June 16, 1999, *after* Jagger told appellant that she could be treated by only one physician at a time. Accordingly, appellant's argument is without merit.

{¶ 76} Appellant next argues that Toledo Hospital and Promedica are liable for Marino's alleged negligence under the dual-capacity doctrine. Appellant's argument fails for the following reasons.

{¶ 77} Generally, an employer who possesses a certificate of workers' compensation insurance enjoys statutory immunity "from non-intentional personal injury and wrongful death tort claims as a matter of law." *Walter v. AlliedSignal, Inc.* (1999), 131 Ohio App.3d 253, 722 N.E.2d 164, citing *Bridges v. Natl. Eng. & Contracting Co.* (1990), 49 Ohio St.3d 108, 551 N.E.2d 163; R.C. 4123.35. However, an exception is created by the dual-capacity doctrine, which holds an employer liable if there is a showing that, at the time of the worker's injury, the employer had "assumed a role other than that of employer.'" Id. at 260, 722 N.E.2d 164, quoting *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 247, 659 N.E.2d 317.

{¶ 78} Appellant urges this court to conclude that Toledo Hospital and Promedica are not immune from tort liability, because Marino's suggestion that she seek chiropractic treatment "was not part-and-parcel of [appellant's and

appellees'] employer-employee relationship." The facts contained in the record do not support appellant's contention.

{¶ 79} It is undisputed that Toledo Hospital and Promedica were in full compliance with the requirements of the Worker's Compensation Act at all times relevant to appellant's lawsuit; appellant was injured during the course of her employment; and she initially sought treatment at OccuHealth, which is operated by appellees to treat injured workers. It is further undisputed that Grady is an independent practitioner and not an employee of OccuHealth, Toledo Hospital, or Promedica. In addition, evidence was presented that Marino, an employee of Toledo Hospital, was acting within the scope of her job duties as a workers' compensation specialist when she gave appellant Grady's name. As previously determined, Marino's actions did not violate Ohio law or established hospital policy.

{¶ 80} On consideration of the foregoing, we find that the only relationship between appellees and appellant was that of employer-employee. Accordingly, the dual-capacity doctrine does not apply, and appellant's argument is without merit.

{¶ 81} In her next three arguments, appellant essentially asserts that, as a result of Marino's suggestion that appellant seek treatment from Grady, appellees are liable for Grady's negligence. We disagree for the following reasons.

{¶ 82} First, appellees have no direct liability for appellant's alleged injury. As set forth above, Marino's suggestion that appellant seek treatment from Grady did not constitute practicing medicine without a license, violated no established hospital policy or other legal duty to appellant, and did not expose Toledo Hospital and Promedica to tort liability under the dual-capacity doctrine.

{¶ 83} Second, as set forth above, the record shows that a jury trial was held, after which Grady was found not negligent and therefore not liable for appellant's alleged injuries. No appeal was taken from the jury's verdict based on the actual evidence presented at trial. As stated in our determination of appellant's second assignment of error, the trial court did not err by refusing to allow Diment, an orthopedist, to give his opinion as an expert on the chiropractic standard of care. Accordingly, appellees have no liability for appellant's alleged injury based on Grady's negligence, and the remaining issues of whether Marino knew Grady was "incompetent" and whether Grady's alleged negligence constitutes an "intervening cause" of injury that absolves appellees of liability are irrelevant.

{¶ 84} Appellant last argues that the trial court erred in granting summary judgment to appellees because an issue of fact exists as to whether appellees and Grady were engaged in a pattern of corrupt activity in violation of R.C. 2923.31 and 2923.32. In support, appellant argues that a jury "could have

concluded" that appellees and Grady "were an enterprise involved in coercing and misleading injured employees of [Toledo] Hospital to accept chiropractic treatment from Defendant Grady instead of physical therapy ordered by their treating physicians."

{¶ 85} Pursuant to R.C. 2923.32(A)(1), the Ohio civil RICO statute, "No person employed by, or associated with any *enterprise* shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a *pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added.) The term "enterprise" is statutorily defined as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C).

{¶ 86} A "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). The term "corrupt activity" is statutorily defined as "racketeering activity" under the Organized Crime Control Act of 1970, 84 Stat. 941, Section 1961(A)(B), (1)(C), (1)(D), and (1)(E), as amended, Title 18, U.S.Code. It also includes "conduct" that constitutes violations of specifically enumerated crimes. R.C. 2923.31(I)(2).

{¶ 87} Ohio courts have held that in order to establish liability under R.C. 2923.32, a plaintiff must show "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Patton v. Wilson,* 8th Dist. No. 82079, 2003-Ohio-3379, at ¶ 12, citing *Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246. The elements must be pleaded with specificity, and sufficient evidence must be presented to overcome a motion for summary judgment. Id. at 209, 692 N.E.2d 246.

{¶ 88} The unauthorized practice of medicine in violation of R.C. 4731.41 is not one of the listed specifically enumerated offenses set out in R.C. 2923.31(I)(2). In any event, as we previously determined, Marino's acts did not constitute the criminal act of practicing medicine without a license. However, appellant further asserts that an issue of fact remains as to whether Marino's conduct amounts to theft by deception or threat, in violation of R.C. 2913.02(A)(3) and (4), which is an enumerated offense under R.C. 2923.31(I)(2).

{¶ 89} R.C. 2913.02 states:

{¶ 90} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶ 91} " * * *

{¶ 92} "(3) By deception;

{¶ 93} "(4) By threat."

{¶ 94} In support of her argument, appellant cites those portions of the record that show that Jagger prescribed physical therapy; Marino told appellant she could seek treatment from Grady; Marino recommended Grady to several injured workers in the past; and Marino used the telephone to inform appellant of her appointment with Grady. Appellant argues that, based on these facts, a jury could conclude that appellees demonstrated an attempt "to exert control over and defraud [appellant] of physical therapy services to which [she] was entitled, * * * pursuant to a pattern of such conduct and using the telephone (wire fraud) to do so * * *." We disagree.

{¶ 95} A review of the record shows that none of the appellees, including Marino, were ever charged with, or convicted of, the crime of theft by threat or deception based on the facts presented in this case. At best, the evidence establishes that appellant, an injured worker, left Jagger's care at OccuHealth after Marino, a workers' compensation specialist for appellant's employer, Toledo Hospital, told appellant that she could receive chiropractic treatment from Grady. Even though appellant claims that she continues to experience pain after taking Marino's suggestion, she has not established that appellees engaged in a pattern of corrupt activity by threatening or deceiving her into receiving chiropractic treatment instead of physical therapy. Finally, the record is unclear as to what services, if any, were actually "stolen" from appellant. No evidence was presented as to the type of physical therapy Jagger prescribed, or how it would have differed from Grady's treatment. Appellant's final argument is without merit.

{¶ 96} On consideration of the foregoing, we hold that the trial court did not err when it granted summary judgment to appellees and dismissed counts one, two, three, four, and ten of the complaint. We further hold that there remains no other genuine issue of material fact and, after considering the evidence presented most strongly in favor of appellant, appellees are entitled to summary judgment as a matter of law. Appellant's first assignment of error is not well taken.

{¶ 97} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

HANDWORK and SKOW, JJ., concur.