DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants/cross-appellees David R. Pheils, Jr., Esq., and Patrick R. Millican, Esq., (collectively "Wilson's attorneys"), appellees/cross-appellants Dee *Page 2 
Marino, Toledo Hospital/ProMedica Health System, Elizabeth Huntoon, M.D., and OccuHealth, (collectively "Hospital appellees"), and appellee/cross-appellant Walter P. Grady, D.C., appeal from an order for attorney fees that was entered against Wilson's attorneys and in favor of the Hospital appellees and Grady. Wilson's attorneys argue that it was error for the court to award any attorney fees in this case. The Hospital appellees and Grady each argue that the amounts of their awards should be increased. For all of the following reasons, we affirm the order of the trial court.
 {¶ 2} This case arises out of injuries allegedly caused by the professional negligence of appellee/cross-appellant Grady, a chiropractic physician, during his treatment of Wilson for a back strain injury that she had sustained while working as a nursing assistant at Toledo Hospital. The work injury occurred on June 8, 1999. On June 9, 1999, Wilson was examined and evaluated by a physician at OccuHealth, a facility operated by Toledo Hospital. The physician prescribed medication and physical therapy, and ordered an x-ray of Wilson's lower spine.
 {¶ 3} Later that day, Dee Marino, a workers' compensation specialist at Toledo Hospital, contacted Wilson and offered her the option of chiropractic treatment instead of physical therapy. With Wilson's permission, Marino scheduled an appointment for Wilson to see Dr. Grady on June 10, 1999. On that date, Wilson's treatment consisted of manipulation of the spine and surrounding muscles. Wilson returned to Grady's office on June 16, 1999, at which time she received additional manipulations of her spine and deep massage of the muscles of her lower back and right hip with a vibrating machine. *Page 3 
 {¶ 4} Grady's medical notes from June 16, 1999 show that he released appellant to resume work on June 18, 1999. On June 17, 1999, Wilson informed Marino that she would not return to Grady's office and, further, demanded to be transferred back to the OccuHealth physician's care. Wilson was given an appointment at OccuHealth on June 21, 1999, where she was examined by Dr. Huntoon. Wilson told Huntoon that she had been experiencing excruciating pain in her right hip after her last visit to Grady on June 16, 1999. Huntoon ordered an MRI and x-rays, and prescribed physical therapy and pain medication.
 {¶ 5} Wilson was subsequently referred to an orthopedic surgeon who injected her hip with a corticosteroid medication and, later, performed surgery. After surgery, Wilson continued to experience severe pain and swelling of the right hip and leg. Eventually she was diagnosed with complex regional-pain syndrome, also known as reflex sympathetic dystrophy, a condition of unknown origin that is exemplified by chronic pain.
 {¶ 6} On June 7, 2000, appellant/cross-appellee Millican and attorney Jack Lenavitt filed a complaint on Wilson's behalf, asserting claims for negligence as against each of the appellees/cross-appellants and a claim that Dee Marino practiced medicine in violation of R.C. 4731.41. The action was later voluntarily dismissed with the right to refile within one year.
 {¶ 7} Appellants/cross-appellees Pheils and Millican timely re-filed the case on January 28, 2003. This time the complaint asserted, in addition to the previously-filed *Page 4 
claims, a claim that appellees/cross-appellants had violated federal and Ohio RICO statutes. The claims were set forth as follows in a ten-count complaint:
 {¶ 8} Count 1 alleged that Dee Marino had practiced medicine in violation of R.C. 4731.41.
 {¶ 9} Count 2 alleged that Dee Marino had negligently administered Toledo Hospital's Health and Welfare Plan.
 {¶ 10} Count 3 alleged vicarious liability on the part of Toledo Hospital/ProMedica Health System for Dee Marino's alleged negligence.
 {¶ 11} Count 4 alleged that Toledo Hospital/ProMedica Health System had negligently supervised and/or trained Dee Marino.
 {¶ 12} Count 5 alleged that Dr. Grady had committed malpractice.
 {¶ 13} Count 6 alleged vicarious liability on the part of Dr. Grady's professional corporation for Dr. Grady's alleged malpractice.
 {¶ 14} Count 7 alleged that Dr. Huntoon had committed malpractice.
 {¶ 15} Count 8 alleged vicarious liability on the part of OccuHealth for Dr. Huntoon's alleged malpractice.
 {¶ 16} Count 9 alleged vicarious liability on the part of Toledo Hospital/ProMedica Health System for the alleged negligence of Dee Marino, OccuHealth, and Dr. Huntoon.
 {¶ 17} Count 10 alleged that appellees/cross-appellants' conduct constituted racketeering activity in violation of federal and Ohio RICO statutes. *Page 5 
 {¶ 18} On December 18, 2003, the Hospital appellees filed a comprehensive motion for summary judgment, along with a cover letter which stated that all eight counts against the Hospital appellees were both factually and legally groundless. In the letter, Wilson was requested to voluntarily dismiss all claims against the Hospital appellees to "avoid any further dedication of time, energy, and expense to the prosecution and defense of the unnecessary and meritless claims." The Hospital appellees were not dismissed.
 {¶ 19} On December 29, 2003, Grady filed a motion for partial summary judgment, seeking judgment in his favor as to Count 10 of Wilson's complaint.
 {¶ 20} On January 2, 2004, Wilson's counsel was sent a second letter, reiterating the Hospital appellees' position that all eight counts against them were both factually and legally groundless. In this letter, Wilson was advised that if the Hospital appellees were not dismissed by January 9, 2004, sanctions would be sought against both Wilson and her counsel.
 {¶ 21} On March 25, 2004, Wilson finally dismissed Dr. Huntoon because "she never provided any services for Plaintiff until after Plaintiff was injured by Defendant Grady, and was unaware of any corrupt activities by the other Defendants."
 {¶ 22} On August 4, 2004, the trial court granted the Hospital appellees' motion for summary judgment "for the reasons set forth in the Motion for Summary Judgment and accompanying briefs and Exhibits * * *." *Page 6 
 {¶ 23} On August 18, 2004, the Hospital appellees filed their motion for sanctions and request for hearing, alleging that Wilson and her counsel had engaged in frivolous conduct in pursuing the subject action against them.
 {¶ 24} On August 19, 2004, the trial court granted Grady's motion for partial summary judgment and dismissed Wilson's civil RICO claims against him. The case proceeded to jury trial on the only remaining claim in Wilson's complaint, a chiropractic malpractice claim against Grady. The case proceeded to verdict, with the jury finding in favor of Grady.[1]
 {¶ 25} On September 10, 2004, Grady filed a motion for sanctions and request for hearing, asserting that he was entitled to all or part of the reasonable attorneys' fees incurred in defending against Wilson's "frivolous federal and state RICO claims."
 {¶ 26} The trial court held an evidentiary hearing on the motions for sanctions on December 7, 2004. At that time, counsel and the trial court agreed that appellees/cross-appellants would proceed against Wilson's attorneys only, and not Wilson. Following the hearing, the trial court found that there was no evidence to show that attorneys Pheils and Millican had a good faith belief, in law or fact, to warrant the filing of a RICO claim against any of the named defendants. As stated by the court:
 {¶ 27} "The Plaintiffs attorneys argued the fact Dee Marino referred injured employees of the hospital to Dr. Grady was evidence of, in their view, the unauthorized practice of medicine in violation of R.C.4731.41, and thus a violation of the RICO *Page 7 
statute. Mr. Pheils and Mr. Millican could point to no other `facts' to support their argument they had a good faith belief to support a RICO claim against these Defendants. Perhaps most illustrative of the absence of facts is Mr. Pheils and Mr. Millican's response to Defendant Hospital's motion for summary judgment on Count Ten: `While Hospital has refused to provide requested discovery and this Court has refused to compel such discovery, which, if produced, Plaintiff believes would amply support Count Ten, there is nevertheless some evidence of RICO activity by Defendants'. FN2 Plaintiffs Memorandum Contra Defendants Dee Marino, Toledo Hospital, Promedica Health System and OccuHealth's Summary Judgment Motion pg. 13. (Emphasis added.) It is obvious that Plaintiffs attorneys were relying upon the discovery process to obtain `facts' to support their RICO claim against the Hospital, Marino, ProMedica Health System, Dr. Huntoon and OccuHealth, and Dr. Grady. Accordingly, attorneys for Plaintiff did not have a good faith factual basis to support the filing of a RICO claim against any of the Defendants.
 {¶ 28} "FN2 The `some evidence' is a reference to Dee Marino referring employees to Dr. Grady as mentioned above.
 {¶ 29} "With respect to legal authority to support their civil RICO claim, Mr. Pheils and Mr. Millican rely primarily upon the case ofRehab Project, Inc. v. Sarno (1992), 80 Ohio App.3d 265. In that case, Plaintiffs alleged civil RICO claims based upon allegations of receiving stolen property, theft, and conspiracy to conduct the theft and receiving enterprises. Each alleged criminal conduct is expressly included in the *Page 8 
definition of `corrupt activity' set forth in R.C. 2923.31(I)(2). In this case, the unauthorized practice of medicine is not listed as a corrupt activity in that statute. Nor have Mr. Pheils or Mr. Millican presented any case law that could reasonably [be] construed as supporting a good faith argument for an `extension, modification, or reversal of existing law', to support the filing of a RICO claim on the facts known to them at the time they signed and re-filed their complaint on behalf of Plaintiff."
 {¶ 30} Based on the foregoing analysis, the trial court determined that Wilson's attorneys had violated the mandates of Civ.R. 11 and R.C.2323.51.
 {¶ 31} Evidence tendered at the hearing demonstrated: 1) that the Hospital appellees had incurred attorney fees and expenses in the amount of $25,050.83 since December 31, 2003; and 2) that Grady's attorney fees and expenses in defending the RICO claim amounted to $15,064.50.
 {¶ 32} The trial court, in its December 28, 2005 order, specifically found that the hourly fees that were charged by counsel for the Hospital appellees and Grady, respectively, were reasonable. The court then stated that it had reviewed the submissions of fees and had subtracted from the total those amounts that it believed represented a "duplication of effort by attorneys in the same firm, such as review of work by one attorney of another." In addition, the court stated that it had subtracted fees "for discussions between counsel for the Hospital [appellees] and Grady regarding their respective cases and strategy on motions." After making these deductions — in the amounts of $6,234.00 for the Hospital appellees and $7,507.50 for Grady — the trial court *Page 9 
found that Grady, or his insurer, had incurred $7,557.00 in reasonable attorney fees and expenses in defending the RICO claim, and that the Hospital appellees had incurred $16,619.00 in reasonable attorney fees and expenses. The court concluded that Pheils and Millican each would be responsible for paying one-half of the total award of attorney fees and expenses for all of the appellees.[2]
 {¶ 33} Appellants/cross-appellees appealed this judgment, raising the following assignments of error:
 {¶ 34} I. "THE TRIAL COURT ERRED IN FINDING APPELLANTS VIOLATED CIV.R. 11, BECAUSE IT FAILED TO FIND THE APPELLEES HAD DEMONSTRATED THAT APPELLANTS' VIOLATION WAS WILLFUL RATHER THAN MERELY NEGLIGENT."
 {¶ 35} II. "THE TRIAL COURT ERRED IN FINDING APPELLANTS VIOLATED R.C. § 2323.51 SIMPLY BASED UPON A FINDING THAT THE FACTS IN APPELLANTS' POSSESSION AT THE TIME OF FILING THE COMPLAINT WERE INADEQUATE TO ESTABLISH A RICO VIOLATION; I.E., NOT WELL GROUNDED IN FACT."
 {¶ 36} III. "THE TRIAL COURT ERRED IN RULINGS UNSUPPORTED BY ANY EVIDENCE PRESENTED AT THE SANCTIONS HEARING." *Page 10 
 {¶ 37} IV. "THE TRIAL COURT ERRED IN AWARDING APPELLEES' $24,176.00 FOR DEFENDING ONE OF TEN COUNTS WHICH MADE NO ADDITIONAL FACTUAL CLAIMS BUT MERELY INCORPORATED THE OTHER COUNTS AS ALSO CONSTITUTING A RICO VIOLATION."
 {¶ 38} Grady raises the following single assignment of error on cross-appeal:
 {¶ 39} I. "THE TRIAL COURT ERRED IN ITS CALCULATION OF ATTORNEYS' FEES."
 {¶ 40} Likewise, the Hospital appellees have filed a notice of cross-appeal regarding the amount of attorney fees that the trial court awarded.
 {¶ 41} We begin with Wilson's attorneys' first assignment of error, wherein they claim that the trial court erred in finding that they had violated Civ.R. 11, absent an express finding that the violation was willful, rather than merely negligent.
 {¶ 42} Civ.R. 11 provides:
 {¶ 43} "Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *." The attorney's signature constitutes certification by the attorney that: 1) he or she has read the pleading, motion, or document; 2) to the best of the attorney's knowledge, information, or belief, the pleading, motion, or document is supported by good grounds; and 3) the pleading, motion or document is not interposed for delay. Civ.R. 11. If the rule is willfully — not merely negligently — violated, a judge may award to the opposing party expenses and attorney's fees. Rindfleisch v. AFT,Inc., 8th Dist. *Page 11 
Nos. 84551, 84897, 84917, 2005-Ohio-191, ¶ 16. A judge who finds such a violation has broad discretion to determine what, if any, sanctions to administer, and the decision to impose sanctions cannot be reversed absent an abuse of discretion. Id.
 {¶ 44} Here, the trial court specifically found that Wilson's attorneys did not have a good faith basis, in law or in fact, to support the filing of the RICO claim. On these grounds the trial court made a further finding that Wilson's attorneys had failed to satisfy the requirements of Civ.R. 11. The trial court did not, however, make any specific determination that Wilson's attorneys' failure amounted to awillful violation of Civ.R. 11. Likewise, our own review of the record reveals no evidence that would support the existence of a willful, as opposed to a merely negligent, violation.
 {¶ 45} Arguing against this conclusion, the Hospital appellees and Grady cite Aultcare Corp. v. Mayle, (Aug. 4, 1997), 5th Dist. No. 96-CA-0374, for the proposition that a lack of a good faith argument for extension, modification, or reversal of existing case law can satisfy the willful violation requirement. In that case, the Fifth District Court of Appeals found that the appellee insurance company seeking to prosecute a legally barred subrogation claim did not have a good faith argument for extension, modification, or reversal of existing case law, in light of continuing, recent Ohio Supreme Court precedent. On that basis alone, the court concluded that the appellants had willfully violated Civ.R. 11.
 {¶ 46} We decline to apply Aultcare to the instant case, for two reasons. First, we find that the case is factually distinguishable from the case at hand to the extent that at the *Page 12 
time the instant case was filed there was no authority specifically indicating that the circumstances alleged by Wilson's attorneys were insufficient to establish a cognizable claim.[3] Second, we find that we disagree with the Aultcare analysis, where the court, in reaching its conclusion that the appellee had violated Civ.R. 11, appears to have considered and applied factors that are appropriate to determining an award of sanctions under R.C. 2323.51. We believe that this rationale — which either conflates or confuses the two varying theories for recovery of sanctions — is in error.
 {¶ 47} Without a willful violation, it was an abuse of discretion for the trial court to sanction Wilson's attorneys under Civ.R. 11. Accordingly, appellants'/cross-appellees' first assignment of error is found well-taken.
 {¶ 48} Wilson's attorneys' argue in their second assignment of error that the trial court erred when it found that they had violated R.C.2323.51. An award of attorney's fees under R.C. 2323.51 is a matter within discretion of the trial court. Shaffer v. Mease (1991),66 Ohio App.3d 400, 407. Therefore, we review a decision to grant or to deny a request for attorney fees pursuant to R.C. 2323.51 under an abuse of discretion standard. Patton v. Ditmyer, 4th Dist. Nos. 05CA12, 05CA21, 05CA22, 2006-Ohio-7107, ¶ 73. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. *Page 13 
 {¶ 49} In this case, the applicable version of R.C. 2323.51 requires the court to determine whether the challenged conduct constitutes frivolous conduct and, if so, whether any party has been adversely affected by that conduct.[4] See. R.C. 2323.51(B)(2)(c). Any party who has been adversely affected by frivolous conduct may be awarded reasonable attorney fees. R.C. 2323.51(B)(1).
 {¶ 50} R.C. 2323.51 defines two types of frivolous conduct: 1) conduct that obviously serves to harass or maliciously injure another party to the civil action; or 2) conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. R.C. 2323.51(A)(2)(a)(i) and (ii).
 {¶ 51} The question in this case is whether Wilson's RICO claim was warranted under existing law or could be supported by a good faith argument for an extension, modification, or reversal of existing law.[5] Such a question is a matter of law and is reviewed denovo by an appellate court. Patton v. Ditmyer, supra, ¶ 73-74.
 {¶ 52} We begin this portion of our examination with the observation that in order to allege a state RICO violation, the following elements must be pled with specificity: 1) *Page 14 
that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; 2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and 3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. Kondrat v. Morris (1997),118 Ohio App.3d 198, 209; see also, Universal Coach, Inc. v. New York City TransitAuth. (1993), 90 Ohio App.3d 284, 291.
 {¶ 53} With regard to the alleged RICO violation, Wilson's re-filed complaint alleges only this:
 {¶ 54} "50. All Defendants' conduct complained of above constituted racketeering activity in violation of Federal and Ohio RICO statutes.
 {¶ 55} "51. As a direct and proximate result of the Defendants' conduct set out above, Plaintiff has incurred permanent and severe physical damage, severe emotional distress and suffered lost wages, lost job opportunities, and has and will incur charges for past, present and future medical expenses and has experienced extreme pain, suffering and anxiety, and will continue to do so in the future to her damage in excess of $300,000.00."
 {¶ 56} Clearly, the material set forth in paragraphs 50 and 51 is insufficiently specific to plead a RICO violation. It is on this basis that appellees/cross-appellants argue that the R.C. 2323.51 award is justified.
 {¶ 57} In making this argument, appellees/cross-appellants ask us to look to Fenley v. Bowman (Apr. 17, 2000), 4th Dist. No. 99CA51. InFenley, the Fourth District *Page 15 
Court of Appeals upheld an award of sanctions pursuant to R.C. 2323.51
on the grounds that the appellant had insufficiently pled her claim for slander per quod. Noting that the complaint failed to identify any specific slanderous statements, and, instead, alleged only "distortions and falsehoods," the court found that the appellant's insufficiently pled complaint was not warranted under existing law and, thereby, supported the sanctions award under R.C. 2323.51.
 {¶ 58} We are persuaded by the reasoning in Fenley, supra, and find it applicable to the current case. Here, Wilson's nonspecific and limited allegations were wholly insufficient to plead a RICO violation and, thus, were not warranted under existing law. Accordingly, we conclude that the trial court properly awarded sanctions pursuant to R.C.2323.51. Wilson's attorneys' second assignment of error is therefore found not well-taken.
 {¶ 59} Wilson's attorneys argue in their third and fourth assignments of error, respectively: 1) that the trial court erred in awarding sanctions unsupported by evidence presented at the sanctions hearing; and 2) the trial court erred in awarding appellees/cross-appellants (collectively) $24,176 "for defending one of ten counts which made no additional factual claims but merely incorporated the other counts as also constituting a RICO violation." The Hospital appellees and Grady argue, by way of their cross-appeals, that the trial court erred in its calculation of attorney's fees. As all of these arguments related, we will consider them together in this analysis.
 {¶ 60} As pointed out by Wilson's attorneys: *Page 16 
 {¶ 61} "A motion for attorney fees under R.C. 2323.51 must be decided solely upon the evidence presented at the hearing, not upon evidentiary materials submitted with the motion or otherwise. [Pisanick-Miller v.Roulette Pontiac Cadillac GMC, Inc. (1991), 62 Ohio App.3d 757, paragraph two of the syllabus] The party seeking attorney fees under R.C. 2323.51 must affirmatively demonstrate that he or she incurred additional attorney fees as a direct, identifiable result of defending the frivolous conduct in particular. [Wiltberger v. Davis (1996),110 Ohio App.3d 46, 54.]" Teter v. Rossi, 11th Dist. No. 2001-T-0103, 2002-Ohio-4818, ¶ 40.
 {¶ 62} The amount of attorney fees to be awarded in this case is guided by the following provision, set forth at R.C. 2323.51(B)(3):
 {¶ 63} "(B)(3) The amount of an award that is made pursuant to division (B)(1) of this section shall not exceed, and may be equal to orless than, whichever of the following is applicable:
 {¶ 64} "(a) If the party is being represented on a contingent fee basis, an amount that corresponds to reasonable fees that would have been charged for legal services necessitated by the frivolous conduct had the party been represented on an hourly fee basis or another basis other than a contingent fee basis;
 {¶ 65} "(b) In all situations other than that described in division (B)(3)(a) of this section, the attorney's fees that were both reasonably incurred by a party and necessitated by the frivolous conduct." (Emphasis added.) *Page 17 
 {¶ 66} Evidence presented at the hearing in support of both motions for sanctions included: 1) Testimony by Patrick Millican that demonstrated that he did not know the elements of a RICO claim; 2) Testimony by David Pheils that demonstrated that he neither conducted any research related to establishing the elements of a RICO claim, nor reviewed the federal or Ohio RICO statutes before filing the claim; and 3) a copy of the re-filed complaint containing the deficient RICO claim.
 {¶ 67} In conducting this analysis, we will give separate consideration to the awards granted to Grady and to the Hospital employees. Evidence presented at the hearing in support of Grady's motion for sanctions consisted of an affidavit by Rudolph A. Peckinpaugh, Jr., which detailed the legal services that were provided in connection with the defense of the frivolous RICO claim and which demonstrated the amount of attorney fees that were incurred as a result. Such evidence affirmatively demonstrates the amount of additional attorney fees that were incurred as a direct, identifiable result of defending the frivolous conduct. See, Wiltberger, supra, at 54.
 {¶ 68} Upon consideration of all of the evidence adduced at the hearing, we find that the R.C. 2323.51 sanctions award in favor of Grady was adequately supported by the evidence. Accordingly, Wilson's attorneys' third and fourth assignments of error are found not well-taken with respect to appellee/cross-appellant Grady.
 {¶ 69} Having now determined that sanctions were properly granted in favor of Grady, we next consider Grady's argument that the trial court erred in failing to award him the entire amount requested. As indicated above, the amount awarded under the *Page 18 
applicable version of R.C. 2323.51 "may be equal to or less than" the attorney's fees that were both reasonably incurred by a party and necessitated by the frivolous conduct. See, R.C. 2323.51 (B)(3). In this case, the trial court's decision to reduce the amount of Grady's award by amounts that it believed represented a duplication of effort and by the amounts charged for discussions between counsel for the Hospital appellees and Grady regarding their respective cases and strategy on motions was not unreasonable and was not an abuse of discretion. Grady's assignment of error on cross-appeal is, therefore, found not well-taken.
 {¶ 70} Evidence presented at the hearing specifically in support of the Hospital appellees' motion for sanctions included affidavit testimony by trial counsel Timothy D. Krugh which detailed the legal services that were provided in connection with defending the action since December 31, 2003, and which demonstrated the cost of such services to be $25,050.93. Unfortunately for the Hospital appellees, said evidence does not affirmatively demonstrate the amount of additional attorney fees that were incurred as a direct, identifiableresult of defending the frivolous conduct. See, Wiltberger, supra, at 54. Therefore, we cannot find that the R.C. 2323.51 sanctions award in favor of the Hospital appellees was adequately supported by the evidence.
 {¶ 71} The Hospital appellees argue that an alternative basis for the trial court's award in this case exists pursuant to R.C. 2923.34.[6]
R.C. 2934.34 relevantly states: *Page 19 
 {¶ 72} "(H) Upon application, based on the evidence presented in the case by the plaintiff, as the interests of justice may require, the trial court may grant a defendant who prevails in a civil action brought pursuant to this section all or part of the defendant's costs, including the costs of investigation and litigation reasonably incurred, and all or part of the defendant's reasonable attorney fees, unless the court finds that special circumstances, including the relative economic position of the parties, make an award unjust."
 {¶ 73} The language of R.C. 2923.34(H) allows a trial court complete discretion in awarding attorney fees and costs to defendants who prevail in a civil RICO action. Thus, in the instant case, where the RICO claim was not warranted under existing law (see discussion, supra), we find that it was within the trial court's discretion to award attorney fees and expenses to the Hospital appellees under this provision. Further, because responsibility for the filing of the unwarranted RICO claim was placed squarely on Wilson's attorneys, and because R.C. 2923.34 imposes no limitation against awarding sanctions against a plaintiffs counsel, we find that the trial court appropriately levied sanctions against Wilson's attorneys, as opposed to against Wilson herself.
 {¶ 74} On the other hand, we additionally conclude that it was within the trial court's discretion to reduce the amounts awarded by amounts that it believed represented a duplication of effort and by the amounts charged for discussions between counsel for the Hospital appellees and Grady regarding their respective cases and strategy on motions. *Page 20 
 {¶ 75} Accordingly, Wilson's third and fourth assignments of error are found not well-taken with respect to the Hospital appellees' award. Further, the Hospital appellees' assignment of error on cross-appeal, challenging the amount of sanctions awarded by the trial court, is likewise found not well-taken.
 {¶ 76} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed in all respects, except to the limited extent that Wilson's attorneys' conduct was found to have amounted to a violation of Civ.R. 11. In this regard, the judgment is reversed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J., William J. Skow, J. and George M. Glasser, J., Concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] On Wilson's appeal to this court, the verdict and summary judgment were affirmed in all respects. See Wilson v. Marino (2005),164 Ohio App.3d 662.
[2] The court expressly found that Wilson had played no role in asserting the RICO claim (other than being the named plaintiff), and, as a result, the award of sanctions would not be assessed against her.
[3] We note that following our decision in Wilson v. Marino (2005),164 Ohio App.3d 662, this is no longer the case.
[4] R.C. 2323.51 was amended, effective April 7, 2005. However, the legislature has not indicated any intent for the amended version to be retrospective. Therefore, under R.C. 1.48, we presume that the statute is prospective, and we apply to this case the version of the statute that existed just prior to the April 7, 2005 amendment. See Patton v.Ditmyer, supra, ¶ 76-78.
[5] We note that although Wilson's attorneys assert in their argument that the trial court based its award on a determination that Wilson's RICO claim was unsupported by the facts, in fact, the trial court based its award on a determination that Wilson's RICO claim was unsupported by the facts or the law.
[6] Although the trial court failed to address the issue of R.C.2923.34 sanctions in its December 28, 2005 order, the matter was raised at the trial court in the Hospital appellees' motion for sanctions. *Page 1